J-A26027-20

2020 PA Super 265

IN THE INTEREST OF: C.B., A MINOR   :   IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: C.B.

No. 948 EDA 2020

Appeal from the Dispositional Order Entered February 26, 2020
In the Court of Common Pleas of Chester County
at No(s): CP-15-JV-0000125-2019

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, J.:       **FILED NOVEMBER 06, 2020**

C.B. appeals from the dispositional order[1] adjudicating him delinquent on more than 100 counts of possessing and viewing child pornography[2] (F-3) on his school-issued computer. The court determined that C.B. was in need of supervision and ordered him to serve a period of probation with conditions

---

[*] Former Justice specially assigned to the Superior Court.

[1] In juvenile proceedings the final order from which a direct appeal may be taken is the order of disposition entered after the juvenile is adjudicated delinquent. **See Commonwealth v. S.F.**, 912 A.2d 887, 888-89 (Pa. Super. 2006).

[2] 18 Pa.C.S. § 6312(d) ("Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense."). The Commonwealth withdrew 99 counts of criminal use of a communication facility, 18 Pa.C.S. § 7512(a).

tailored to the committed offenses. Specifically, the juvenile court concluded "that there was insufficient credible evidence to the contrary to rebut the statutory presumption within the Juvenile Act, 42 Pa.C.S. § 6341(b), that the commission of a felony shall be sufficient to sustain th[e] finding [that a juvenile is in need of treatment, supervision, or rehabilitation]."[3] After careful review, we affirm.

On October 24, 2018, C.B. turned in his school-issued laptop computer to his high school for repairs. At some point during the repair process, it was discovered that child pornography files had been downloaded to the computer. Local authorities were contacted and, on May 15, 2019, the Chester County District Attorney's Office filed a delinquency petition against C.B. for the above-stated crimes and related offenses. The petition alleged that C.B. "us[ed] a school[-]issued laptop [inside his residence, to] knowingly and intentionally view, possess[,]   or control videos, photos, computer depiction[s], or other material depicting [] children under the age of 18, engaging in prohibited sexual acts or the simulation of such acts." Petition Alleging Delinquency, 5/15/19, at 2. The court held pre-adjudicatory hearings in June and August of 2019, where it ordered that C.B. report to his probation officer and abide by specific conditions. **See** Pre-Adjudicatory Hearing Order, 6/4/19, at 1; Pre-Adjudicatory Hearing Order, 8/7/19, at 1. At

---

[3] Post-Dispositional Motion Opinion, 2/26/20, at 1 n.1.

these hearings, C.B. did not admit to any of the offenses alleged in the delinquency petition. *Id.*

Following an adjudicatory hearing held on November 26, 2019, where the Commonwealth presented eight witnesses, the court found that C.B. had "committed one or more delinquent acts as alleged in the petition" — specifically, 100 counts of possessing and viewing child pornography under section 6312(d). Adjudicatory Hearing Order, 12/3/19, at 1-2; *see* Pa.R.J.C.P. 408 (ruling on offenses). The court based its finding that C.B. committed the delinquent acts where "approximately 597 depictions of child pornography, many containing graphic sexual abuse and rape of very young pre-pubescent children," some as young as four years old, "as well as approximately 367 videos depicting the same, [had been downloaded] on his school[-]issued computer" under his unique user ID.[4] Trial Court Opinion, 2/26/20, at 1 n.1; N.T. Adjudicatory Hearing, 11/26/19, at 30. The court determined that C.B. acquired, possessed and viewed this child pornography multiple times on his school-issued computer from January 2018 through November 2018. *Id.* The court deferred its delinquency determination, but set additional conditions for C.B. and ordered that he undergo a forensic screening with a psychologist and meet with a certified therapist.

---

[4] Each student in C.B.'s school was given a unique login ID based on their graduation year, last name and first initial, as well as a unique password only known to that student and to some personnel in the IT department. N.T. Adjudicatory Hearing, 11/26/19, at 29.

On January 17, 2020, the court held a hearing to determine whether C.B. was "in need of treatment, supervision or rehabilitation." **See** Pa.R.J.P. 409(A); **see also** 42 Pa.C.S. § 6341(b). At the hearing, Arian Labenskyj, a licensed professional counselor at Human Services of Chester County, testified that C.B. met with her eleven times[5] for sex offender treatment from May 15, 2019 through August 1, 2019. N.T. Adjudication/Dispositional Hearing, 1/17/20, at 16-17. At his intake session with Ms. Labenskyj, C.B. told her that he clicked on a link in a chatroom that downloaded zip files of child pornography to his computer and that he viewed the images about three times. **Id.** at 22, 30-31. At the sessions, Ms. Labenskyj talked with C.B. about grooming behaviors, thought patterns, identifying what is healthy and unhealthy sexual behavior, and why it is inappropriate to view child pornography. **Id.** at 17-18. Ms. Labenskyj testified that prior to C.B. being charged, he did not understand that his behavior had been illegal. **Id.** at 18-19. Ms. Labenskyj opined, within a reasonable degree of certainty, that after completing the 11 treatment sessions with her, C.B. was not in need of further sex offender treatment, that the likelihood of him reoffending was low, and that she did not have any concerns about him having "unrestricted, unsupervised internet access a[nymore]." **Id.** at 37. **See id.** at 19-20 ("I feel that he understands that viewing child pornography is inappropriate and

---

[5] Each session lasted, on average, 50 minutes. **Id.** at 29-30.

illegal."). However, Ms. Labenskyj's final report, issued after her eleventh session with C.B. on August 1, 2019, stated that "[C.B.]'s mental health disability[6] **may be affecting his ability to gain insight into the seriousness of his actions**." Encounter Form by Adriana Labenskyj, LPC, 8/1/19, at 1 (emphasis added).

Jonathan Koestel, a Chester County Juvenile Probation Officer who supervised C.B. in the instant matter, testified that he had met with C.B. in April 2019 and discussed potential outpatient options for his treatment. *Id.* at 42. Officer Koestel testified that his office ultimately referred C.B. to Ms. Labenskyj for sexual counseling. *Id.* Officer Koestel testified that in addition to his sexual offender treatment with Ms. Labenskyj, C.B. voluntarily performed 30-40 hours of community service and donated $200-$250 to a center for missing and exploited children. *Id.* at 42-43. Officer Koestel stated that C.B. had successfully tested negative in all of his pre-adjudication court-ordered urine tests and had complied with all pre-adjudication court recommendations and conditions. *Id.* at 43. Officer Koestel also noted that since April 2019, C.B. had an excellent school attendance record, no discipline issues, passing grades in all of his classes, and was involved in extracurricular

---

6 Ms. Labenskyj testified that because C.B. had been diagnosed with Autism Spectrum Disorder, he could use further treatment with developing social skills since he "doesn't have relationships with other kids at school" and "feels more comfortable behind the computer screen." *Id.* 19-20, 36.

activities associated with his interest in the military. *Id.* at 43-44. Officer Koestel testified that because C.B. had successfully completed treatment and had no more existing issues at home or school, he is now considered a low risk on both the Youth Level of Service Assessment scale and the Juvenile Sex Offender Assessment Protocol-II, a risk assessment scale for sex offenders. *Id.* at 45. Based on this low-risk, Officer Koestel recommended that "**if [C.B.] were adjudicated [delinquent]** . . . **[he would] place [C.B.] on probation**, . . . [have him] submit to DNA processing, pay the DNA processing fee[,] and then also [have him] pay the standard fees associated with the adjudication." *Id.* (emphasis added). After C.B. successfully completed those recommendations, Officer Koestel would "close this case." *Id.*

Finally, at the hearing, the court admitted, as a defense exhibit, a forensic report prepared by psychologist, Bruce E. Mapes, Ph.D. The Chester County Juvenile Probation Office had referred C.B. to Dr. Mapes for a forensic screening "to assist [the Probation Office] in identifying the most appropriate interventions [for C.B.]" Forensic Report of Bruce E. Mapes, Ph.D., 12/18/19, at 1. In addition to interviewing C.B. and C.B.'s mother, Dr. Mapes reviewed C.B.'s police referral, court report, school record and recent discharge summary from Ms. Labenskyj. *Id.* Ultimately, Dr. Mapes concluded that "[in his] opinion[, C.B.] presents a low risk for sexual recidivism and **does not require any further treatment or restrictions for sex offender risk**[, but] would benefit from further treatment focusing on interpersonal/social

relationships[,] although this would not be related to sex offending risk." *Id.* at 4 (emphasis added).

At the conclusion of the hearing, the court determined that C.B. was in need of supervision, adjudicated him delinquent on all counts of possessing and viewing child pornography under section 6312(d), and ordered disposition to consist of a period of probation, with conditions, and the payment of costs and restitution.[7] On January 17, 2020, C.B. filed a timely post-dispositional

_____

[7] Specifically, the adjudication/dispositional order stated the following:

> Successfully perform any graduated response required by your probation officer to promote positive behavior and address non-compliance with court[-]ordered conditions of supervision. (A list of possible graduated responses is described on a graduated response colloquy form which may be obtained from your probation officer.) The [c]ourt will review any imposed graduated response, which is contested by the juvenile. Unless good cause is shown for an earlier review, graduated responses of electronic home monitoring/GPS and Evening Reporting Center participation will be reviewed by the court within fourteen (14) days from imposition.

Adjudication/Dispositional Order, 1/24/20. The order also stated that C.B. was to: abide by all reasonable household rules and curfew; comply with all municipal, county, state and federal laws and ordinances; have no attendance or discipline problems at school; permit his probation officer to visit him at his home, school or workplace; not possess any firearms; have no contact (direct or indirect) with other known offenders, co-offenders, co-defendants, or victims; have no unsupervised contact with children two or more years younger than himself; not possess, view, or access any type of pornography; have no unsupervised use of the internet or internet accessing device; participate in mutual development and accomplishment of his case goals and activities; pay costs or perform community service in lieu of costs; report any contact with law enforcement to juvenile probation office; submit to random urine tests for substance abuse testing; and submit to police processing within 30 days. *Id.*

motion; the court denied the motion on February 26, 2020.  C.B. filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  C.B. presents the following issues for our consideration:

(1)     Is the juvenile court's decision that [] C.B. is in need of continued supervision contrary to the testimony and opinions expressed by:

    (a)     The testimony and report of Ariana T. Labenskyj, L.P.C.[;]

    (b)     The report of Dr. Bruce E. Mapes[; and]

    (c)     The testimony and report of Juvenile Probation Off[ic]er Jonathan Koestel?

(2)     Is the decision of the juvenile court [that] . . . C.B. is in need of supervision in error inasmuch as the Commonwealth presented no evidence or reports that C.B. was in need of continued supervision?

(3)     If there is any applicable statutory presumption concerning treatment, supervision or rehabilitation of C.B.[,] was it clearly and compellingly overcome by the testimony and report of Ariana Labenskyj, the report of Dr. Bruce E. Mapes, and the testimony and report of Juvenile Probation Officer Jonathan Koestel?

Appellant's Brief, at 3-4.

"The Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition[.]  We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion."  ***In re T.L.B.***, 127 A.3d 813, 817 (Pa. Super. 2015).  An adjudication of delinquency requires the juvenile court to find that the juvenile:  (1) has committed a delinquent act **and** (2) is in need of treatment, supervision, or rehabilitation.

*Commonwealth v. M.W.*, 39 A.3d 958, 959 (Pa. 2012). "A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." *Id.* at 966. After determining that a juvenile has committed a delinquent act, the court shall then hear evidence "as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence,[8] and [] make and file its findings thereon." 42 Pa.C.S. § 6341(b).[9] Finally, "[i]n the absence of

_____

[8] In 2018, the legislature amended section 6341(b) to add "as established by a preponderance of the evidence" in the second sentence. *See* Act 2018-49 (H.B. 159), § 2, approved June 28, 2018, eff. August 27, 2018. *See also* N.T. Adjudication/Dispositional Hearing, 1/17/20, at 49 (trial court stating, "[B]ut since that case, the statute was changed to preponderance of the evidence[.]"). *Cf. In the Interest of N.C.*, 171 A.3d 275, 281 (Pa. Super. 2017) (observing that pre-amended version of section 6341(b) "is silent as to the standard of proof required for establishing the juvenile is in need of treatment, supervision, or rehabilitation" and reading proof beyond a reasonable doubt standard into statute).

[9] The entirety of section 6341(b) of the Juvenile Act reads as follows:

> Finding of delinquency.--If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed. **The court shall then proceed immediately or at a postponed hearing**, which shall occur not later than 20 days after such finding if the child is in detention or not more than 60 days after such finding if the child is not in detention, **to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon.** This time limitation may only be extended pursuant to the agreement of the child and the attorney for the

evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation." *Id.* Moreover, in dispositional hearings under section 6341(b):

> [A]ll evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition. . . . [This also] includes any screening and assessment examinations ordered by the court to aid in disposition, even though no statements or admissions made during the course thereof may be admitted into evidence against the child on the issue of whether the child committed a delinquent act. . . . [Moreover, t]**he parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the reports. Sources of information given in confidence need not be disclosed.**

42 Pa.C.S. §§ 6341(d)(1)(i)-(ii), (2) (emphasis added).

The juvenile court determined, beyond a reasonable doubt, that C.B. committed the alleged acts of viewing/possessing child pornography, specified the particular offense and included the grading and counts of the offense in

---

Commonwealth. The court's failure to comply with the time limitations stated in this section shall not be grounds for discharging the child or dismissing the proceeding. In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation. If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered.

42 Pa.C.S. § 6341(b) (emphasis added).

its adjudicatory order. *See* 42 Pa.C.S. § 6341(a). The court then held the required hearing to determine if C.B. was in need of supervision, rehabilitation or treatment and should be adjudicated delinquent. *See* 42 Pa.C.S. § 6341(b). Here, all of C.B.'s issues boil down to one main contention—whether the trial court erred in finding C.B. was in need of supervision where it was contrary to the evidence he presented at the adjudication/dispositional hearing, the Commonwealth did not present any evidence that C.B. was in need of supervision, and C.B.'s evidence rebutted any presumption that he was in need of supervision under section 6341(b).

In coming to its conclusion that C.B. was in need of continued supervision, the juvenile court made the following, lengthy statement on the record at the conclusion of the adjudication/dispositional hearing:

> All right, I have had a thorough opportunity to consider the arguments made by counsel, and I have looked at the exhibits again, looked at the law. And I understand this is not a decision I made lightly and I'm not doing so. I am making a decision pursuant to [Pa.R.J.P.] 409. The question is whether the juvenile is in need of treatment, supervision or rehabilitation.
>
> I am satisfied that the juvenile has received the treatment that has been recommended by the experts. D[octo]r Mapes, in particular, has many years as an expert in offenses related to this.
>
> I'm not, however, convinced that supervision should end. I believe supervision needs to continue. Consequently, I am adjudicating this juvenile delinquent on all of the counts that were found that he committed on November 26th.
>
> I note that he will be 18 next year. If he were to commit these types of offenses as an adult, he would be looking at [a] seven year[] maximum on each offense, 700 years possible. Of course, in adult court[,] that is a wholly different system, but the magnitude of the crime is reflected by the grading.

- 11 -

Additionally, even though adult court guidelines don't count here, it is of interest to know that had he been in adult court, he would be subject to incarceration for any one of these counts.

The evidence in this case demonstrates a significant interest in child pornography. The amount of pornography and the types are pervasive in the evidence.

Additionally, with this particular [sic] and this is very much [] computer-related[,] I note that he has had issues with regard to misusing computers in the past as reflected in Dr. Mapes' report, and that he has a special interest with computers.

**Consequently, I don't believe that supervision should end, but it should continue, and that the restricted internet access provision that he currently is required to comply with should continue with regard to his supervision in particular.**

**If supervision were to end, I think the ramifications to him are too significant to allow him to be unsupervised and relapse into the kind of thinking that led him to commit these offenses.**

**He has been successful in treatment. He has done everything he has been required to comply with [in] regard to treatment. Supervision, however, needs to be for some period of time to indicate that the treatment has convinced him not to fall back into this behavior.**

**So even though he has successfully completed treatment, I believe he needs to be supervised to ensure that he is abiding by and will abide by treatment in the future.**

\* \* \*

And given the fact that he's been adjudicated on these counts, disposition as recommended then would include a period of probation with the sex[-]offender conditions in place.[10]

---

[10] Those three conditions are: (1) do not obtain, possess or read pornography of any type; (2) no unsupervised access to the internet or internet accessing

* * *

He's already completed community service, so that needn't be imposed. There are certain mandatory fees associated with this. He will need to undergo DNA collection. And normally the DNA fee would be imposed. All of those mandatory fees are included except the $250 DNA fee which is waived in this instance. And this is the first instance I ever can remember because you have made a charitable contribution voluntarily in a similar amount. So that fee is waived in this case.

* * *

[A]dditionally, restitution will need to be paid. Hopefully, when we come back in no more than six months, he will have fully complied with all conditions of supervision and perhaps even before then, and we will be in a position to have this case successfully closed out. Thank you.

N.T. Adjudication/Dispositional Hearing, 1/17/20, at 55-66. ***See also*** Trial Court Opinion, 5/26/20, at 14 (C.B. . . . "did not provide sufficient credible evidence to meet [C.B.'s] burden of persuasion. As against C.B.'s disturbing interest in child pornography, his concerning attitudes and statements during therapy, and the merely adequate sex offender therapy provided, the opinions relied upon by [C.B.] did not support a conclusion that he should be unsupervised."); Post-Dispositional Motion Opinion, 2/26/20, at 1 n.1 (after considering counsels' arguments, facts pertaining to delinquent acts committed by C.B., C.B.'s pre-adjudicatory behavior and the law, "[t]he court concluded that there was insufficient credible evidence to the contrary to rebut

---

devices; and (3) no unsupervised contact with anyone two or more years younger than yourself. N.T. Adjudication/Dispositional Hearing, 1/17/20, at 58.

- 13 -

the statutory presumption within the Juvenile Act, 42 Pa.C.S. § 6341(b), that the commission of a felony shall be sufficient to sustain this finding.").

Based on the record before us, we find that the juvenile court came to a reasoned conclusion that C.B. was in need of supervision. While the Commonwealth did not present any witnesses or expert reports at the dispositional hearing, because the delinquent acts that C.B. committed constituted felonies, in the absence of evidence to the contrary, the grading of the offense alone was sufficient to sustain a finding that C.B. was is in need of treatment, supervision or rehabilitation. **See** 42 Pa.C.S. § 6341(b). Thus, C.B. was required to present sufficient evidence to the contrary or risk application of the presumption. **See M.W.**, 39 A.3d at 966 n.9 (court required to find juvenile committed delinquent act and is in need of treatment, supervision, or rehabilitation . . . "even where the delinquent acts constitutes a felony, because, while the commission of such an act presumptively supports a finding that the juvenile is in need of treatment and supervision . . . the juvenile court must still make that finding after allowing for other evidence.").[11] Moreover, while the statute states that the court is "**to hear**

---

[11] Our Court has acknowledged that "the Juvenile Act does not specify explicitly who has the burden of demonstrating that the juvenile is or is not in need of treatment, supervision, or rehabilitation." **N.C.**, 171 A.3d at 281. However, in **N.C.**, the Court ultimately concluded that because the Commonwealth had filed the petition alleging the juvenile was a "delinquent child," it bore the burden of proving both that the child committed the alleged acts *and* that the child was in need of treatment, supervision, or rehabilitation. **Id.** Notably, however, **N.C.** did not implicate section 6341(b)'s presumption

**evidence** as to whether the child is in need of supervision, treatment or rehabilitation," 42 Pa.C.S. § 6341(b) (emphasis added), section 6341 also permits "the parties or their counsel [an] opportunity to examine and controvert written reports . . . and to cross-examine individuals making the reports." *Id.* at § 6341(d)(2).

Notably, the assistant district attorney vigorously cross-examined C.B.'s witnesses and controverted its documentary evidence, making the following points at the hearing to support finding C.B. in need of supervision:

- C.B. told Dr. Mapes that he only viewed teenage victims in the photos and videos where evidence at adjudication hearing revealed he viewed graphic images of children as young as 4 being raped and abused;

- C.B. told Dr. Mapes that he hadn't really learned anything new in treatment with Ms. Labenskyj;

- C.B. lacked insight into why he committed the offenses and minimized his behavior when he told Dr. Mapes "he had nothing better to do" in his treatment, said he [viewed the pornography] because he was "curious," and told him he that he only looked at teenagers;

- C.B. failed to realize how serious the offenses were in his last appointment with Ms. Labenskyj who mentioned in her report that C.B. was not able to fully appreciate the seriousness of what he had done;

- A total of eleven 50-minute sessions (for a total of less than 10 hours) with Ms. Labenskyj, who has only treated two or three juveniles who have viewed pre-pubescent child pornography, is not sufficient treatment for C.B. and has not allowed him to understand and appreciate the seriousness of what he has done;

---

of the necessity of treatment, supervision or rehabilitation because the felonies charged in the case had been *nolle prossed*. **Id.** at 280 n.3. Moreover, as previously noted, **N.C.** was decided prior to the legislature adding the "preponderance of the evidence" standard to section 6341(b). **See supra** at n.7.

- Because C.B. will be an adult in less than four months from date of adjudication/dispositional hearing, serious concerns exist regarding him responsibly using the internet without restrictions, especially where he would be punished severely if he were to reoffend as an adult; and

- The Commonwealth's main goal of making sure C.B. does not reoffend will best be accomplished by supervised internet use and gradual waning of restrictions to make sure he responsibly uses technology without accessing prohibited materials.

N.T. Adjudication/Dispositional Hearing, 1/17/20, at 51-54.

Despite C.B.'s claim that the juvenile judge's decision was "contrary to the testimony and opinions expressed by [the witnesses and reports from the adjudication/dispositional hearing]," Appellant's Brief, at 17, the court accepted Ms. Labenskyj's and Dr. Mapes' recommendations that C.B. was not in need of any further sex offender treatment. ***See*** N.T. Adjudication/Dispositional Hearing, 1/17/20, at 20 (Ms. Labenskyj testified "I wouldn't make any further recommendations for **treatment** for sex offender.") (emphasis added); Forensic Report by Bruce E. Mapes, Ph.D., 12/18/19, at 4 ("It is my opinion that . . . [C.B] does not require[] any further **treatment**[.]") (emphasis added). In step with those recommendations, the court determined by a preponderance of the evidence that C.B. was in need of *supervision*, not treatment. Additionally, the court's disposition was in direct alignment with Probation Officer Koestel's recommendation of probation if C.B. were adjudicated delinquent.

While the juvenile court did place standard sex-offender restrictions on C.B.'s probation and ordered a term of probation longer than what Officer

Koestel may have recommended,[12] the length of and nature of the restrictions that the court placed on C.B.'s probation are reasonable—particularly the requirement that he be supervised when using the internet, a condition that is intrinsically tied to his delinquent behavior and the fact that he has an affinity for computers. *See* Post-Dispositional Motion Opinion, 2/26/20, at 2 n.1 ("Here, supervision is especially appropriate given [C.B.]'s unusually close association with computers, the very tempting device he used to access such a vast quantity of child pornography."); *see also* N.T. Adjudication/Dispositional Hearing, 1/17/20, at 19 (Ms. Labenskyj testifying "[C.B.] does feel more comfortable behind a computer, speaking with people online."); *Id.* at 36 (Ms. Labenskyj testifying, "And, he again, like he feels more comfortable behind the computer screen. That way he doesn't have face-to-face interaction."); Forensic Report by Bruce E. Mapes, Ph.D, 12/18/19, at 2-3 (noting one of C.B.'s hobbies is computer programming, that his goal is to attend school "to study digital media," and that C.B. told him he would look at pornography on adult websites when masturbating); *Id.* at 3

_____

[12] The court intimated that it wanted C.B.'s probation to last until he had completed the school year successfully, noting that it would review the disposition "in no more than six months" and that "[if] he [has] fully complied with all conditions of supervision[,] and perhaps even before then, . . . we will be in a position to have this case successfully closed out." N.T. Adjudication/Dispositional Hearing, 1/17/20, at 66. Indeed, this case presents a unique procedural posture where C.B. was less than four months away from his eighteenth birthday at the time of the adjudication/dispositional hearing. *See* Petition Alleging Delinquency, 5/15/19, at 1 (indicating C.B. was born in May of 2002).

(noting that C.B.'s mother told Dr. Mapes that C.B. had been suspended for hacking a middle school computer and that C.B. is "good on the computer.").

Under such circumstances, we do not find the juvenile court committed a manifest abuse of discretion by determining that C.B. was in need of supervision and ordering a disposition of probation where it concluded C.B.'s evidence did not overcome section 6341(b)'s presumption that he was in need of supervision, treatment or rehabilitation. ***Cf. T.L.B.***, ***supra*** (court did not abuse discretion in determining juvenile not in need of treatment, supervision or rehabilitation and dismissing delinquency petition where juvenile had been involved in intensive sex-offender treatment "multiple times a week" for eight months at time of adjudication/dispositional hearing, juvenile had admitted to committing charges, juvenile had been supervised by CYF for over one year at time of delinquency hearing, and therapist no longer had concerns related to juvenile's mental health with regard to necessitating higher level of service). The court's decision was both thoughtful and thorough. ***See*** Pa.R.J.P. 101 (Juvenile Rules shall be interpreted to accomplish three goals of Juvenile Act: community protection, accountability for the offenses committed, and rehabilitation). Moreover, the court's disposition was "consistent with the protection of the public interest and best suited to [C.B.]'s supervision . . . and welfare." ***See*** 42 Pa.C.S. § 6352(a)(2) (Juvenile Act vests court with authority to set term of probation where disposition is consistent with protection of public interest and best suited to child's treatment, supervision, rehabilitation, and welfare).

C.B., a 17½-year-old male diagnosed with autism, was found to have possessed and viewed over 100 photographs and videos depicting child pornography, involving children as young as four years of age. At the beginning of treatment, C.B. was candid with his therapist that he did not understand why viewing such material was inappropriate, let alone illegal. While his therapist testified that C.B. completed the course of therapy set out for him and was cooperative and amenable to treatment, the fact remains that he also is very much obsessed with computers, spending an inordinate amount of time at the screen. The experts who testified opined that C.B. was no longer in need of sex offender treatment or rehabilitation, recommendations that the trial court accepted.

Our review of the juvenile court record does not indicate any expert opinion specifically with regard to the need for or efficacy of supervision for this young man. The trial court made it clear that it wanted C.B. to fully understand the seriousness of his behavior; to accomplish this goal, the court limited his access to unfettered computer trolling for at least a few months. Further, we note that the juvenile court had the opportunity to observe C.B.'s demeanor and his reaction to his situation. The court's decision to monitor C.B. until his majority is intended to impress upon him the dire need for maintaining correct behavior in the future, specifically into his adulthood. We are loathe to second-guess the juvenile court judge, especially when his actions appear to be consonant with the purpose behind the Juvenile Act.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/20