J-S22036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 223 MDA 2021 |

Appeal from the Dispositional Order Entered January 27, 2021
In the Court of Common Pleas of Snyder County Juvenile Division at
No(s):  CP-55-JV-0000039-2020

BEFORE:  PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED:  AUGUST 9, 2021**

D.S. appeals from the dispositional order[1] entered in the Snyder County

Court of Common Pleas (juvenile court) adjudicating him delinquent of

conspiracy to commit burglary, conspiracy to commit theft, felony burglary,

criminal trespass, theft by unlawful taking, receiving stolen property,

possession of instruments of crime (PIC), institutional vandalism, disorderly

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] D.S. purports to appeal from the court's January 27, 2021 dispositional order **and** its February 5, 2021 order denying his post-dispositional order.  (**See** Notice of Appeal, 2/17/21).  However, the appeal properly lies from only the dispositional order.  **See In Interest of P.S.**, 158 A.3d 643, 649 (Pa. Super. 2017) ("In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent.") (citation and brackets omitted).  We have amended the caption accordingly.

conduct and criminal mischief.[2] D.S. challenges the sufficiency and weight of the evidence to sustain a finding (1) that he committed the crimes of which he was found guilty and (2) that he was in need of treatment, supervision or rehabilitation. We affirm.

We take the following factual history and procedural background from the trial court's May 5, 2021 opinion[3] and our independent review of the record.

## I.

On October 5, 2020, the Commonwealth filed a delinquency petition against D.S. alleging that he and two other youths, A.H. and G.B., committed burglary, theft and related charges at the Bible Baptist Church in Snyder County. At the time of the theft at the church, he was on probation in another Snyder County matter for his admitted theft of a firearm. At the dispositional hearing, the Commonwealth presented the testimony of co-conspirators A.H. and G.B. and Probation Officer Adrianne Robbins (P.O. Robbins). D.S. testified on his own behalf.

---

[2] 18 Pa.C.S. §§ 903, 3502(a)(4), 3503(a)(1)(ii), 3503(a)(1)(i), 3921(a), 3925(a), 907(a), 3307(a)(1), 5503(a)(4), 3304(a)(5) and 3921(a).

[3] D.S. failed to attach to his brief a copy of the trial court's opinion or his Rule 1925(b) statement in violation of Rule 2111. *See* Pa.R.A.P. 2111(a)(10), (a)(11), (b).

**A.**

Fifteen-year-old A.H. testified that late on the night of May 11, 2020, he and G.B. walked up the road from A.H.'s mother's house and met D.S., who lived nearby, outside the subject church. A.H. was friends with D.S. through G.B. The three discussed how best to get into the church, through a door or window. A.H. first broke a window on a door, but they decided the back window would be best for gaining entry, so A.H. broke the window by throwing a rock through it. Once inside, the three searched for money, rummaging through cabinets in the kitchen and offices. Upstairs, there was an office and baptizing, service and instrument rooms. They found a locked money bag in the upstairs office and A.H. used a knife to cut it open. Inside was cash and checks. The three of them split the $500.00[4] they found before leaving the church, with D.S. splitting off from A.H. and G.B., who headed back to A.H.'s mother's house. (N.T. Hearing, 10/26/20, at 7-15, 17-18).

Sixteen-year-old G.B. testified similarly to A.H., with a few inconsistencies. He stated that late on the night of May 11, 2020, A.H. was spending the night at his house when the two went out for a walk. A.H. went to get D.S. and the three boys met at the church. They all entered the church

---

[4] Although A.H. testified that he was unsure of the exact amount of money they found, the Commonwealth gave an offer of proof that the church's Pastor would testify that $500.00 was taken that night. (**See** N.T. Hearing, 10/26/20, at 38).

after A.H. threw a rock through a back window. While G.B. watched, D.S. and A.H. went through drawers in a kitchen area and an upstairs instrument room. In a second-floor office, the boys discovered a Northumberland National money bag, which A.H. opened using a knife, revealing small envelopes with checks and cash inside them. A.H. and D.S. split the money they found between the two of them because G.B. did not want any of it. Upon leaving the church, A.H. and G.B. went one way and D.S. went another. (*See id.* at 26, 29-34).

D.S. lived at his mother's house in the same town as the church. He denied being at the subject church on May 11, 2020, because he was staying at the home of his cousin, Joshua Allen, that night. He testified that his aunt, Tara Jennings, was also present. Although Ms. Jennings was noticed as an alibi witness, she did not attend the trial because D.S. failed to subpoena her. (*See id.* at 41, 43, 45-46, 51).

At the conclusion of the hearing, the court found there was sufficient evidence to prove that D.S. committed all crimes with which he was charged. It recognized that the testimony of A.H. and G.B. was inconsistent to a certain extent. However, it found G.B.'s testimony questionable because he appeared to be minimizing his involvement. It found A.H.'s testimony credible, in part because he admitted to throwing the rock and cutting open the money bag. It concluded that the evidence established that the three boys conspired to enter the church together with the intent to commit a crime and, in fact, did

so, stealing $500.00 and breaking windows, resulting in financial damages to the church. (*See id.* at 53-55).

After the court found that D.S. committed the crimes with which he was charged, including burglary as a felony of the second degree, the Commonwealth presented the testimony of P.O. Robbins to establish that D.S. was in need of treatment, supervision or rehabilitation pursuant to Section 6341(b) of the Juvenile Act.[5]

**B.**

P.O. Robbins testified that she had been supervising D.S. since November 20, 2019, when he was convicted of theft. Although he began that probationary period on ankle monitoring, it had been removed due to his participation in services provided by Justice Works. On July 4, 2020, he had

---

[5] Section 6341(b) of the Juvenile Act provides:

> If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed. The court shall then proceed immediately or at a postponed hearing … to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon. … In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation. …

42 Pa.C.S. § 6341(b).

a curfew violation, but had been compliant other than his arrest for the May 11, 2020 burglary. When he was arrested for that offense, he was put back on ankle monitoring and remained on it at the time of the hearing. When asked if D.S. needed additional treatment, P.O. Robbins responded that D.S. was on ankle monitoring and she could impose house arrest conditions, but no additional treatment. Two weeks prior to the hearing, she had referred D.S. for an independent living program to help him with employment. She recommended that probation with electronic monitoring be continued. (**See id.** at 59-61).

After hearing argument from counsel, the court found that:

> Based on the fact that [D.S.] was on supervision when this offense occurred, that his prior adjudication was for a *crimen falsi* offense, and give[n] the nature of this offense that there was a forcible entry and into a house of worship, the Court finds that [D.S.] is in need of treatment, supervision and rehabilitation.

(N.T. Dispositional Hearing, 10/26/20, at 64). The court placed D.S. on probation and ordered continued electronic monitoring.

## C.

On November 12, 2020, the court granted D.S.'s motion to reconsider, vacating its October 26, 2020 adjudication and opening the record so that Ms. Jennings could provide alibi testimony. A second adjudicatory hearing was held on January 8, 2021. Ms. Jennings testified that although D.S. was at her home for a substantial period, she could not say whether he was at her residence on the date of the incident. If someone left her house at night, she

would have known because she had trouble sleeping. At the conclusion of Ms. Jennings' testimony, the court asked questions to clarify exactly when D.S. was at her home in the month of May, which revealed that Ms. Jennings was unable to provide certainty for any particular date, including May 11, 2020. (*See* N.T. Hearing, 1/08/21, at 4-5, 7, 11-14).

After hearing argument from counsel, the court stated that it believed Ms. Jennings was as honest as possible where she was being asked to recall details from eight or nine months prior, but that, because she was not able to provide certainty, it did not provide an alibi to refute the court's prior findings. (*See id.* at 16-17). The court again adjudicated D.S. delinquent and a dispositional hearing was scheduled for January 27, 2021.

**D.**

At the January 27, 2021 dispositional hearing, based on discussion with counsel, consideration of P.O. Robbins' October 26, 2020 testimony and review of a July 2020 Youth Level of Services (YLS) report, the court formally adjudicated D.S. delinquent and ordered that he be placed on probation with electronic monitoring at the Probation Department's discretion, plus costs and restitution. (*See* N.T. Hearing, 1/27/21, at 8).

On February 5, 2021, the court denied his post-adjudicatory motion and D.S. timely appealed. He and the court have complied with Rule 1925. *See* Pa.R.A.P. 1925.

**II.**

D.S. raises four issues for our review: (1) Whether the evidence was insufficient to sustain his adjudication of delinquency on all crimes charged; (2) whether the adjudication of delinquency was against the weight of the evidence for all crimes charged; (3) whether the trial court improperly shifted the burden regarding the alibi witness to him; and (4) whether the trial court erred in finding he was in need of treatment, supervision or rehabilitation to support a finding of delinquency.[6] (**See** D.S.'s Brief, at 4). Although raised as four separate issues, in effect, D.S. argues that the court erred in finding the Commonwealth established the two factors required to prove delinquency: that he committed the charged crimes and that he requires treatment, supervision or rehabilitation.[7]

> An adjudication of delinquency requires the juvenile court to find that the juvenile: (1) has committed a delinquent act **and** (2) is in need of treatment, supervision, or rehabilitation. A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency. After determining that a juvenile has committed a delinquent act, the court shall then hear evidence "as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and make and file its findings thereon." 42 Pa.C.S. § 6341(b). Finally, "in the absence of evidence to the contrary, evidence of the commission of acts

---

[6] We have reordered the issues for ease of disposition.

[7] "The Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition[.] We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." **Interest of C.B.**, 241 A.3d 677, 681 (Pa. Super. Ct. 2020) (citation omitted).

which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation." *Id.* (footnote omitted).

*C.B.*, *supra* at 682 (case citations, brackets and one footnote omitted; emphasis in original).

## A.

In a one-page "argument," D.S. claims that the evidence was insufficient to support his adjudication as to any of the eleven crimes with which he was charged.[8] (*See* D.S.'s Brief, at 14-15). The Commonwealth posits that D.S.'s sufficiency argument is waived because D.S. failed to adequately develop this claim in his brief. (*See* Commonwealth's Brief, at 7). The argument section

_____

[8] Our standard of review of the sufficiency of the evidence to support a juvenile adjudication is the same as that for an adult proceeding.

> [W]e must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

*Interest of N.A.D.*, 205 A.3d 1237, 1239–40 (Pa. Super. 2019) (citation omitted). "Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." *Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1075 (Pa. Super. 2013) (citation omitted).

does not identify or dispute the specific elements of the numerous crimes D.S. was convicted of; nor does it argue which of those particular elements were not met. (*See* D.S.'s Brief, at 13-15). Other than providing boilerplate law on the Commonwealth's burden of proof and our standard of review, the argument section provides no pertinent law, discussion thereof, citation to the record or synopsis of the evidence. *See* Pa.R.A.P. 2119(a)-(d); *see also Commonwealth v. Plante*, 914 A.2d 916, 924 (Pa. Super. 2006) ("We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review."); *Commonwealth. v. Dupre*, 866 A.2d 1089, 1096 (Pa. Super. 2005) ("Failure to conform briefs to the requirements of the Rules of Appellate Procedure may result in the quashing or dismissing of an appeal where the defects in the brief are substantial.") (citation and internal quotation marks omitted); Pa.R.A.P. 2101. Hence, this claim is waived.[9] Moreover, to the extent we can discern D.S.'s argument, it would not merit relief.

---

[9] Although not raised by the Commonwealth, we note that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Rivera*, 238 A.3d 482, 496 (Pa. Super. 2020). Failure of an appellant to do so results in waiver of the issue. *See id.* Here, D.S.'s Rule 1925(b) statement merely concludes that the evidence was insufficient to support the crimes with which he was adjudicated delinquent. (*See* D.S.'s Rule 1925(b) Statement, at 2). This fails to identify which element or elements the Commonwealth failed to prove of the eleven crimes with which he was convicted, and his sufficiency argument is waived on this basis as well.

The sum total of D.S.'s one-page sufficiency argument is that the evidence was insufficient: (1) to establish conspiracy, because it did not prove there was an agreement to enter the church and commit a crime within; (2) to support that he committed a theft or received stolen property where it did not establish he entered the property, there were no items from the church discovered in his possession, and the only testimony regarding the theft was conflicting; and (3) to prove that he possessed an instrument to employ it criminally, vandalized/damaged any church property or created a dangerous condition. (*See* D.S.'s Brief, at 14-15).

Criminal conspiracy requires proof of "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." *Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013) (citing 18 Pa.C.S. § 903(a). "Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013) (citation omitted).

As relevant here, a person commits burglary if he enters an unoccupied building that is not adapted for overnight accommodations with the intent to commit a crime therein. *See* 18 Pa.C.S. § 3502(a)(4). "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable

- 11 -

property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). This Court has similarly defined the elements of receiving stolen property as: "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa. Super. 2015) (citation omitted); 18 Pa.C.S. § 3925(a). "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.' 18 Pa.C.S. § 907(a).[10]

In this case, all of the crimes for which D.S. was adjudicated required proof of the same basic set of facts: D.S. conspired with A.H. and G.B. to break into the church to steal money by breaking a window and they did so. D.S.'s claim that there was no evidence produced to prove the above crimes is belied by the record. At the October 26, 2020 adjudicatory hearing, A.H.

---

[10] The additional crimes for which D.S. was adjudicated delinquent all arose out of the same allegation that he and his co-conspirators broke the church window to gain entry and stole money from inside. An individual is guilty of criminal trespass if he breaks into a building, with knowledge he is not privileged or licensed to do so. *See* 18 Pa.C.S. § 3503(a)(1)(ii). "A person commits the offense of institutional vandalism if he knowingly … vandalizes … or otherwise damages … any church, synagogue or other facility or place used for religious worship or other religious purposes[.]" 18 Pa.C.S. § 3307(a)(1). Finally, he commits disorderly conduct and criminal mischief where he "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he … creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor" and "intentionally damages real or personal property of another." 18 Pa.C.S. §§ 3304(a)(5), 5503(a)(4).

testified that he and his friends and co-conspirators, D.S. and G.B., broke into the church late on the night of May 11, 2020. Before gaining entry, the three discussed how best to do so, whether via a door or window. After A.H. threw a rock through a window in the door, the three decided another window would be best, and A.H. then threw a rock through that window to gain entry. Once inside, all three of them searched for money, rummaging through cabinets in the kitchen and offices. They found a locked money bag in an upstairs office and A.H. used a knife to cut it open. Thereafter, D.S. and his co-conspirators split the money they found between them and left the church with it. The juvenile court found that A.H.'s testimony was credible, a finding that we will not disturb. **See Commonwealth v. Scott**, 146 A.3d 775, 778 (Pa. Super. 2016) ("We will not disturb the factfinder's credibility findings, which are supported by the evidence of record.").

Further, although the court found that G.B.'s testimony lacked credibility where he appeared to be minimizing his involvement in the crime, our review confirms that his testimony corroborated A.H.'s on the salient facts. He placed D.S. at the scene and stated that the three of them accessed the church through the broken window and stole money.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and contrary to D.S.'s claim, the record did contain sufficient evidence to support his adjudication. Moreover, his specific allegations, that there were neither items from the church nor an instrument

of crime discovered in his possession and that the only testimony regarding the theft was conflicting,[11] are likewise unavailing. A rock can be an instrument of crime if it was adapted for a criminal use and "possessed under circumstances not manifestly appropriate for lawful use." 18 Pa.C.S. § 907(b). While D.S. did not actually possess the rock and throw it himself, he is culpable for the criminal actions of A.H. throwing the rock to break the window in furtherance of the conspiracy. *See Commonwealth v. Wayne*, 720 A.2d 456, 463 (Pa. 1998), *cert. denied*, 528 U.S. 834 (1999) ("All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.").

Furthermore, the fact that he was not found in possession of the stolen money is not persuasive where the Commonwealth can establish its case by purely circumstantial evidence. *See N.A.D.*, *supra* at 1239–40. The testimony that he took a portion of the stolen money and left the church with it was sufficient circumstantial evidence of possession under the totality of the circumstances. *See id.*; *Pettyjohn*, *supra* at 1075. The sufficiency of the evidence challenge lacks merit.

---

[11] We will address the conflicting nature of the testimony in D.S.'s weight of the evidence claim because variances in testimony go to the weight and not the sufficiency of the evidence. *See Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014).

**B.**

D.S. maintains that his adjudication of delinquency was against the weight of the evidence because the testimony was conflicting and inconsistent, the Commonwealth did not establish there was an agreement to enter the property,[12] and D.S. had an alibi witness for the time that the incident occurred. (*See* D.S.'s Brief, at 11-13).[13]

> Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the [] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Sanchez*, 36 A.3d 24, 27 (Pa. 2011) (citations and quotation marks omitted). "It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Commonwealth v. Williams*, 176 A.3d 298, 306 (Pa. Super. 2017). "A new trial should not be granted because of a mere conflict in the testimony or because [the reviewing court]

---

[12] As observed in Section IIA, the Commonwealth proved the existence of a conspiracy by circumstantial evidence, which it was authorized to do.

[13] "[A]ppellate review [of a weight of the evidence claim] is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. … Indeed, it is oft-stated that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa. Super. 2011) (citations and internal quotation marks omitted).

on the same facts would have arrived at a different conclusion." ***Commonwealth v. Widmer***, 744 A.2d 745, 752 (Pa. 2000) (citation omitted).

D.S.'s arguments that the testimony was inconsistent and that he had an alibi witness go to credibility and the weight to be afforded their testimony, which was within the province of the factfinder. ***See Widmer***, ***supra*** at 752; ***Williams***, ***supra*** at 306. Here, the court expressly acknowledged the conflicting nature of the co-conspirators' testimony. It questioned the credibility of G.B.'s testimony because he appeared to be attempting to minimize his own involvement in the conspiracy. It found that A.H. testified credibly, specifically because he implicated himself when he admitted that he broke the window by throwing the rock and that he tore the money bag open with the knife. The court found that D.S.'s alibi witness, although she testified credibly, was unable to provide with sufficient certainty that D.S. was at her home at the time of the incident.[14] Similarly, although G.B. testified that D.S. was briefly at a second burglary, which defense counsel claimed was belied by

_____

[14] D.S. claims that the court "improperly shifted the burden regarding an alibi witness to the juvenile through [its] questioning of the witness." (D.S.'s Brief, at 9). While a court has a duty to maintain impartiality, the cases cited by D.S. involved jury trials where a judge's questioning of a witness and perceived bias might affect their decision. (***See*** D.S.'s Brief, at 10). This case involved no such concerns where it involved a waiver trial. Moreover, our review of the record reveals that the court, as factfinder, merely was questioning the proffered alibi in an attempt to fully understand her testimony. We discern no abuse of discretion.

a video recording, how this inconsistency affected the weight to be afforded the testimony as a whole was within the province of the court, which had the authority to believe all, some or none of the testimony. In reviewing the record, we conclude that the juvenile court properly exercised its discretion in denying D.S. a new trial where the verdict is not so contrary to the evidence to be shocking to the conscience. *See Sanchez*, *supra* at 27; *Ratushny*, 17 A.3d 1269, 1272. This claim fails.

**C.**

D.S. maintains that even if the evidence was sufficient to support the court's finding that he committed the crimes, it erred in finding that he required treatment, supervision or rehabilitation because he was already compliant with supervisory probation and participating in independent living services for a previous adjudication when he committed the crimes herein and at the time of his adjudicatory and dispositional hearings. (*See* D.S.'s Brief, at 8-9). This claim does not merit relief.[15]

D.S.'s burglary adjudication was graded as a felony of the second degree, which alone was sufficient to sustain a finding that he was in need of treatment, supervision or rehabilitation, and he failed to meet his burden to

_____

[15] D.S. provides no legal authority in support of his argument that a court cannot find a juvenile in need of treatment, supervision or rehabilitation after the Commonwealth proves he committed certain crimes, merely because he is serving a term of probation for a prior adjudication. *See* Pa.R.A.P. 2119(a), (b).

- 17 -

provide sufficient evidence to the contrary to refute the application of this presumption. *See* 42 Pa.C.S. § 6341(b). Further, after the juvenile court determined that the Commonwealth established that D.S. committed the alleged acts of burglary and related crimes beyond a reasonable doubt, it received testimony and evidence to determine if he needed supervision, rehabilitation or treatment.

Specifically, P.O. Robbins testified to her recommendation that he be sentenced to probation and treatment consistent with what he was receiving on his prior adjudication for theft of the firearm. Additionally, the YLS report from July 2020 reflected at that time that D.S. had two or more failures to comply with the probation imposed in his prior adjudication. (*See* N.T. Hearing, 1/27/21, at 3, 5-6). Based on the foregoing, particularly where D.S. was on supervision when this incident occurred, his prior adjudication involved a *crimen falsi* and the fact that there was forcible entry into a house of worship, the court found that he required further treatment, supervision and rehabilitation and adjudicated him delinquent.

We conclude that the juvenile court came to a reasoned conclusion where the evidence of record demonstrated that he committed the alleged criminal acts and that he required treatment, supervision or rehabilitation. *C.B.*, *supra* at 682; 42 Pa.C.S. § 6341(b). Therefore, the court did not manifestly abuse its discretion in finding that the evidence was sufficient to

adjudicate D.S. delinquent.  **See C.B.**, **supra** at 681; **N.A.D.**, 205 A.3d 1237;

**Pettyjohn**, 64 A.3d 1072, 1075.  We affirm the dispositional order.

Dispositional order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/09/2021