J-A24043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.E. | : | No. 1463 WDA 2019 |

Appeal from the Order Dated August 27, 2019
in the Court of Common Pleas of Allegheny County
Juvenile Division at No(s):  CP-02-JV-0000685-2019

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:              **FILED JANUARY 26, 2021**

B.E. appeals from the dispositional Order entered following his adjudication of delinquency for simple assault.[1]  We affirm.

The juvenile court summarized the facts underlying this appeal as follows:

> On April 10, 2019, the Pittsburgh [Bureau of Police] filed a Written Allegation, asserting that B.E. assaulted a nurse at the Western Psychiatric Hospital [("WPH")] … on March 26, 2019. According to the nurse who was assaulted, an eyewitness, and hospital video, B.E. was chasing the victim around in the hospital attempting to obtain her hospital keys.  [B.E.] is then observed slapping and punching the victim on the right side of her face.  The victim went to UPMC Presbyterian Hospital for emergency treatment due to her injuries.  It was then determined that B.E. had broken the nurse's nose.  After the initial investigation, it was confirmed that the nasal fracture required surgery for repair.

---

[1] **See** 18 Pa.C.S.A. § 2701(a)(1).

Juvenile Court Opinion, 2/7/20, at 1 (unnumbered) (footnote omitted). B.E. was 14 years old at the time of the incident.

On June 4, 2019, the Commonwealth filed a Delinquency Petition, charging B.E. with the delinquent act of aggravated assault, a first-degree felony.[2]

The juvenile court held a pre-hearing conference on July 2, 2019. At that time, defense counsel requested that B.E. undergo a competency evaluation and a psychiatric evaluation. The juvenile court continued the matter pending the evaluations.

On August 27, 2019, the juvenile court conducted an adjudicatory hearing. At that time, the parties entered into a negotiated settlement. The Commonwealth agreed to amend the charge, and B.E. completed an Admissions Form, in which he admitted to committing the delinquent act of simple assault, a second-degree misdemeanor. Further, the Commonwealth and B.E. agreed to determine the appropriate amount of restitution at a later date, when more information became available. **See** N.T., 8/27/19, at 2-3. B.E.'s mother ("S.E.") and his probation officer, Matthew Filipovic ("P.O. Filipovic"), also testified during the adjudicatory hearing. At the conclusion of the hearing, the juvenile court accepted B.E.'s admission, and determined that B.E. was in need of treatment, supervision or rehabilitation.

---

[2] **See** 18 Pa.C.S.A. § 2702(a)(1).

The juvenile court adjudicated B.E. delinquent, and placed him on probation "until further order of this [c]ourt, under and subject to the rules and regulations of the County Juvenile Probation Office." Dispositional Hearing Order, 8/27/19, at 1. The juvenile court also ordered B.E. to pay standard court costs, complete 25 hours of community service, continue with mental health treatment, attend school daily and on time, and have no inappropriate contact with the victim. B.E. filed a timely Notice of Appeal from the Dispositional Order.[3]

Following a separate restitution hearing on October 1, 2019, the juvenile court ordered B.E. to pay restitution to the victim in the amount of $500.38.[4]

On October 19, 2019, the juvenile court ordered B.E. to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days

_____

[3] "In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent." *In Interest of P.S.*, 158 A.3d 643, 649 (Pa. Super. 2017) (citation, quotation marks and brackets omitted); *see also In re J.G.*, 45 A.3d 1118, 1121-23 (Pa. Super. 2012) (concluding that the juvenile court had authority to issue a restitution order *after* it had entered its dispositional order, as nothing in the Juvenile Act requires a court to order restitution within 30 days of entry of a dispositional order; nothing in the Juvenile Act prevents a court from scheduling restitution review after information becomes available; and the juvenile was aware that the Commonwealth sought restitution at the time he was adjudicated delinquent).

[4] B.E. subsequently filed a Motion for Reconsideration, challenging the amount of restitution on the basis that many of the victim's expenses had been covered by worker's compensation. The juvenile court scheduled a hearing on the Motion for Reconsideration for February 5, 2020. The certified record contains no additional information concerning this hearing. The amount of restitution is not at issue in this appeal.

of the date the Order was entered on the docket. B.E.'s counsel subsequently filed a Petition for Extension of Time to file a concise statement, which the juvenile court denied on January 3, 2020. On January 14, 2020, after receiving notice from this Court that the certified record for this case was overdue, the juvenile court filed a Statement in Lieu of Opinion, stating that it was unable to respond to B.E.'s Notice of Appeal, because B.E. had not filed a concise statement. B.E. filed with this Court a Petition to Remand, explaining that the juvenile court did not formally rule on counsel's Petition for Extension of Time until approximately two months after it was filed. B.E. therefore requested that this Court remand the case to the juvenile court for the filing of a concise statement, *nunc pro tunc*. On January 23, 2020, this Court entered an Order remanding B.E.'s case to allow B.E. to file a *nunc pro tunc* Pa.R.A.P. 1925(b) concise statement, and for the juvenile court to file an opinion. Both B.E. and the juvenile court complied.

On appeal, B.E. raises the following issue for our review: "Whether the evidence was insufficient as a matter of law to find that B.E. was in need of treatment, supervision, and rehabilitation through the juvenile court system, and, therefore, to adjudicate B.E. delinquent?" Brief for Appellant at 7.

B.E. claims that he was not in need of treatment, supervision, or rehabilitation through the juvenile court system. *Id.* at 19. B.E. asserts that the juvenile court failed to make a finding that he requires treatment, supervision or rehabilitation. *Id.* at 20-21. Additionally, B.E. argues that the

juvenile court did not conduct an oral colloquy of B.E. regarding his admission until after it had determined that B.E. was delinquent, and that the colloquy was defective. *Id.* at 23-24. Further, B.E. argues, "the juvenile court is not required to determine that the child is in need of supervision or rehabilitation simply because the case involves restitution." *Id.* at 28.[5]

Initially, for context, we reference the stated purpose of the Juvenile Act:

> Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S.A. § 6301(b)(2). "This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents." *In re B.T.C.*, 868 A.2d 1203, 1204 (Pa. Super. 2005) (citation and quotation marks omitted).

For further context, before adjudicating a child delinquent and entering a dispositional order, a juvenile court must first make two distinct findings. "Before entering an adjudication of delinquency, the Juvenile Act requires a juvenile court to find that a child has committed a delinquent act *and* that the

---

[5] Though B.E. purports to challenge the sufficiency of the evidence, B.E. does not argue that the evidence fails to support an adjudication of delinquency for simple assault. Rather, his claim is properly characterized as a challenge to the juvenile court's exercise of discretion in making the necessary findings.

child is in need of treatment, supervision, or rehabilitation." *In Interest of N.C.*, 171 A.2d 275, 280 (Pa. Super. 2017) (citation omitted; emphasis in original); *see also* 42 Pa.C.S.A. § 6302 (defining a "delinquent child" as "[a] child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation.").

B.E.'s claim challenges both steps of the process for adjudicating a child delinquent. The portion of B.E.'s argument challenging the adequacy of his admission colloquy pertains to the first step of the process, *i.e.*, the finding that the child committed a delinquent act. B.E. did not preserve this claim in his Pa.R.A.P. 1925(b) Concise Statement, or in his Statement of Questions Involved; rather, B.E. only preserved a challenge to the second required finding. Accordingly, this portion of B.E.'s argument is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement … are waived."); *Commonwealth v. Scott*, 952 A.2d 1190, 1191 (Pa. Super. 2008) (stating that "waiver automatically applies … if an issue is not included in the Rule 1925(b) statement…."); *see also* Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Thus, we address only B.E.'s argument that the juvenile court abused its discretion in determining that he is in need of treatment, supervision, or rehabilitation through the juvenile court.

"The Juvenile Act grants broad discretion to juvenile courts, and we will not disturb the lower court's disposition absent a manifest abuse of discretion." *In Interest of N.C.*, 171 A.3d at 280.

> A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency. After determining that a juvenile has committed a delinquent act, the court shall then hear evidence "as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and make and file its own findings thereon." 42 Pa.C.S.[A.] § 6341(b).

*Interest of C.B.*, 2020 PA Super 265, at *3 (Pa. Super. 2020) (footnotes and some citations, quotation marks, and brackets omitted).

Regarding dispositional hearings, section 6341 provides, in relevant part, as follows:

> If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed. **The court shall then proceed immediately or at a postponed hearing**, which shall occur not later than 20 days after such finding if the child is in detention or not more than 60 days after such finding if the child is not in detention, **to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon**. This time limitation may only be extended pursuant to the agreement of the child and the attorney for the Commonwealth. The court's failure to comply with the time limitations stated in this section shall not be grounds for discharging the child or dismissing the proceeding. In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation. If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss

the proceeding and discharge the child from any detention or other restriction theretofore ordered.

42 Pa.C.S.A. § 6341(b) (emphasis added).[6]  Section 6341 also provides as follows regarding the evidence a court may receive:

> **(d) Evidence on issue of disposition.--**
>
> (1)(i) In disposition hearings under subsection[] (b) … all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition.
>
> (ii) Subparagraph (i) includes any screening and assessment examinations ordered by the court to aid in disposition, even though no statements or admissions made during the course thereof may be admitted into evidence against the child on the issue of whether the child committed a delinquent act.
>
> (2) The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the reports.  Sources of information given in confidence need not be disclosed.

*Id.* § 6341(d).

During the adjudicatory hearing, P.O. Filipovic requested that the juvenile court place B.E. on probation, and order 25 hours of community service.  N.T., 8/27/19, at 3.  P.O. Filipovic indicated that he has a good relationship with the family, based on his past work with them, and that he would continue to work with the family as directed.  *Id.* at 4.  P.O. Filipovic

---

[6] The presumption set forth in section 6341(b) does not apply because B.E. entered an admission to the delinquent act of simple assault, a second-degree misdemeanor.

testified that B.E. had started school, and was receiving services through Holy Family Institute. *Id.* P.O. Filipovic stated that, at that time, B.E. was receiving psychiatric care through Probation. *Id.* at 5. Additionally, P.O. Filipovic stated his understanding that, on the date of the incident, B.E was at WPH for medication adjustments. *Id.* at 4.

S.E. testified as follows regarding the reason B.E. was at WPH:

[Defense Counsel]: And why was he -- why did you have him at [WPH]?

[S.E.]: That day he was at school, they 302'd[7] him to -- (unintelligible) -- committing suicide and was looking for scissors, and they took him down there and then we decided to keep him, plus he was off a couple of his medications. We figured since he's there, get his medications readjusted.

[Defense Counsel]: So he got his medication adjusted while he was there?
[S.E.]: Yes.

[Defense Counsel]: And he was discharged from [WPH]?

[S.E.]: Yeah. He was there for two weeks.

*Id.* at 6-7 (footnote added). S.E. also testified that, at that time, B.E. was receiving psychiatric care through Wesley Family Services, and that B.E. has been compliant with his medications. *Id.* at 7. S.E. stated that B.E. had started school at Holy Family, where he has an individualized education plan, and that Holy Family offers emotional and behavior support. *Id.*

---

[7] Section 302 of the Mental Health Procedures Act provides for an involuntary emergency examination and treatment, for a period not to exceed 120 hours. *See* 50 P.S. § 7302.

The juvenile court then heard arguments from both parties. B.E.'s counsel argued that B.E. was not in need of *further* treatment, as he was compliant with his medication, and he receives the services he needs through Wesley Family Services. **Id.** at 8. B.E.'s counsel also highlighted that P.O. Filipovic did not recommend additional services. **Id.** at 9; **see also id.** (wherein B.E.'s counsel stated, "The only thing that Probation is offering is community service and pay court fees. [B.E.] does not need any additional services. They're not even recommending any additional services be put in place."). In response, the Commonwealth stated,

> Judge, we have an admission. I mean, clearly, there are injuries. [B.E.] has a history of aggression that has culminated in his admission to the simple assault today. The victim is in compliance with the negotiated settlement. Her main concern is that [B.E.] gets treatment and that she receive restitution in this matter.

**Id.** at 9.

Thereafter, the juvenile court stated as follows:

> In regard to the matter concerning [B.E.]—first of all, we should be aware that this was not the first time he's been in court. **There's no question that he needs further court supervision and/or treatment**. [B.E.'s] actually in some type of treatment now, so when we look at the adjudication phase, it doesn't mean that he needs more treatment, just that he needs some treatment, which obviously he does.
>
> There's been no argument or any request that [B.E.] is incapable of assisting his [c]ounsel in regard to this matter, so in regard to his competency, that's not part of this issue here today.
>
> I'm in agreement with Probation, that [B.E.] does need further [c]ourt supervision and/or treatment. Therefore, he is adjudicated delinquent in regard to the [P]etition … of simple assault.

- 10 -

[B.E.] is to be placed on probation at this time. Restitution remains open, and this [c]ourt will set a court date in regard to such costs, and he is to have no inappropriate contact with any nurses or doctors there at Wesley Spectrum.

[B.E.] will also complete 25 hours of community service. [B.E. is] also required to attend school each and every day as well as all classes while there. Any questions? He will also continue with his mental health treatment, [and] will follow all recommendations in regard to any meds as well.

*Id.* at 9-11 (emphasis added); *see also* Juvenile Court Opinion, 2/7/20, at 3-5 (unnumbered) (summarizing the above testimony, and referencing its on-the-record explanation for its decision).[8]

We discern no manifest abuse of discretion in the juvenile court's finding that B.E. is in need of treatment, supervision and rehabilitation, and the record supports the juvenile court's finding in this regard. The juvenile court heard arguments from both counsel, as well as the testimony of P.O. Filipovic and S.E. Significantly, P.O. Filipovic, who had worked with B.E.'s family before, testified as to his belief that B.E. should be placed on probation. *See* N.T., 8/27/19, at 3-4. *Cf. In Interest of N.C.*, 171 A.3d at 283-84, 286-87 (concluding that the juvenile court abused its discretion in finding that child

---

[8] We observe that the certified record contains Pre-Disposition Reports, completed by P.O. Filipovic, filed June 26, 2019, and August 16, 2019. Additionally, the juvenile court ordered B.E. to under competency and psychiatric evaluations prior to the adjudicatory hearing. The competency and psychiatric evaluation reports are not included in the certified record, nor did the juvenile court specifically reference their contents during the adjudicatory hearing.

was in need of treatment, supervision or rehabilitation, where court primarily heard arguments from both counsel; the Commonwealth did not introduce evidence; and the court's determination was based on speculation). Moreover, the juvenile court's disposition was "consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare…." 42 Pa.C.S.A. § 6352 (authorizing juvenile courts to impose, *inter alia*, probationary terms and restitution in dispositions of delinquent children). Because we discern no manifest abuse of the juvenile court's discretion, we affirm the juvenile court's dispositional Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2021