J-S32016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.B.C., A MINOR | : | |
| | : | No. 618 MDA 2025 |

Appeal from the Dispositional Order Entered April 9, 2025
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s):  CP-36-JV-0000176-2025

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED OCTOBER 27, 2025**

J.B.C. appeals from the adjudicatory and dispositional order which adjudicated him delinquent on two counts of involuntary deviate sexual intercourse with a child, two counts of indecent assault of a complainant less than thirteen years of age, and two counts of indecent exposure.[1]  J.B.C. challenges the finding of delinquency by arguing that he was not in need of treatment, supervision, or rehabilitation.  After review, we affirm.

The juvenile court provided the following factual and procedural history:

> At the time of the adjudication/dispositional hearing, [J.B.C.] was 20 years old.  [J.B.C.] was born [i]n April [] 2004, and was turning 21 years old approximately a week

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 3123(b) (involuntary deviate sexual intercourse with a child); 18 Pa.C.S.A. § 3126(a)(7) (indecent assault, complainant less than 13 years of age); 18 Pa.C.S.A. § 3127(a) (indecent exposure).

after the scheduled hearing.[2] On April 1, 2025, the Commonwealth filed a motion to certify the petition to the Criminal Court of Lancaster County. The Commonwealth withdrew the motion for certification in exchange for an admission in juvenile court.

[J.B.C.] was charged with two counts of [i]nvoluntary and deviate sexual intercourse, F1; one count of indecent assault, F3; one count of indecent assault, M1; and two counts of indecent exposure, M1. [J.B.C.] was administered an admission colloquy form, and he initialed each page and signed the last page. The facts were read onto the record and [J.B.C.] admitted to the following acts:

> On or about -- on or between, excuse me, the years of 2015 and 2016, [J.B.C.] did put the penis of Victim [1] into his mouth when the victim was approximately six to seven years old. He also did put his penis into the mouth of Victim [2] when that victim was approximately four years old. He also did place the victim -- the penis of Victim 1 [] into his mouth when the victim was approximately six or seven years old. He did kiss [] Victim [3] on the mouth and exposed his penis to her when that victim was six or seven years old. He did expose his penis to Victim [2] when the victim was approximately four years old. He did expose his penis to Victim [3] when the victim was approximately six or seven years old knowing this was likely to offend or alarm that victim. All of the offenses occurring in Lancaster City, Lancaster County, Pennsylvania.

_____

[2] Although J.B.C. was over eighteen years old, the juvenile court retained jurisdiction over him because he was not yet twenty-one years old, and he allegedly committed the acts that led to the delinquent charges when he was under eighteen years old. *See* 42 Pa.C.S.A. § 6302 (defining "Child," in relevant part, as an individual who "is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years"); Pa.R.J.C.P. 630, Comment ("The Juvenile Court has jurisdiction of a delinquent child if the child is under twenty-one years and committed an act of delinquency prior to reaching the age of eighteen." (citations omitted)); *Commonwealth v. Armolt*, 294 A.3d 364, 372 (Pa. 2023).

[J.B.C.'s] attorney informed the court that she was satisfied that it was a knowing and voluntary admission. Based on this information the [c]ourt was satisfied beyond a reasonable doubt that [J.B.C.] committed the acts as petitioned. Juvenile Probation made the recommendation to have [J.B.C.] placed on administrative supervision in the custody of his parents, that he submit to a buccal sample for DNA testing and that he complies with fingerprinting.

[J.B.C.'s] [a]ttorney presented argument that had the offenses been prosecuted closer to the time [of commission] that there may have been a need for treatment. She argued that [J.B.C.] had already received all that counseling. His attorney provided that [J.B.C.'s] Mother [(Mother)] had an evaluation done by Hugh Smith and Associates that was used to obtain services. No copy of such evaluation was provided to the [c]ourt to review. [J.B.C.'s] counsel indicated that [J.B.C.] had school-based counseling, outside counseling, and family-based counseling. The defense argued that [J.B.C.] had "pretty much done everything Juvenile Probation would have asked of him had we been here five years ago." Mother informed th[e] [c]ourt that [J.B.C.] had been in counseling since he was four years old. Mother testified that [J.B.C.] was not in counseling for these behaviors but for similar behaviors.

The [c]ourt followed Juvenile Probation's recommendation and adjudicated [J.B.C.] delinquent placing him on administrative supervision. [J.B.C.] has since filed this [timely] appeal of the April 9, 2025, order.

Trial Court Opinion (T.C.O.), 6/4/25, at 1-2 (internal citations omitted).

J.B.C. raises the following issue for our review:

1. Did the trial court abuse its discretion in adjudicating [J.B.C.] delinquent as [J.B.C.] was not in need of treatment, rehabilitation or supervision?

J.B.C.'s Brief at 4.

We begin with our standard of review. "The Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition[.] We

will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." **Interest of C.B.**, 241 A.3d 677, 681 (Pa. Super. 2020) (citation omitted). The requirement for a delinquency adjudication is twofold: "the juvenile court must (1) determine that the juvenile has committed a delinquent act, *and* (2) determine that the juvenile requires treatment, supervision, or rehabilitation." **Commonwealth v. M.W.**, 39 A.3d 958, 966 (Pa. 2012). "A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." **Id.** (footnote omitted). After determining that a juvenile committed the relevant acts for which the juvenile is alleged to be delinquent, the juvenile court "shall then proceed . . . to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence[.]" 42 Pa.C.S.A. § 6341(b).

"In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation." **Id.** However, although a felony presumptively supports a finding that a juvenile is in need of treatment, supervision, or rehabilitation, the juvenile court must still make that finding after allowing for other evidence. **See M.W.**, 39 A.3d at 966, n.9.

As noted above, J.B.C. admitted to committing the alleged acts, and J.B.C.'s counsel informed the juvenile court that she was satisfied he made a knowing and voluntary admission. **See** T.C.O. at 1-2; N.T., 4/9/25, at 6-8. Based on that, the court found beyond a reasonable doubt that J.B.C.

committed the acts as petitioned, including three felonies. *See* T.C.O. at 2; N.T. at 7-8. Thus, absent evidence to the contrary, J.B.C.'s felony charges alone created a presumption that he needed treatment, supervision, or rehabilitation. *See* 42 Pa.C.S.A. § 6341(b). The court heard evidence on this issue and ultimately concluded that J.B.C. had not presented sufficient evidence to rebut the statutory presumption. *See* T.C.O. at 4-5. Thus, the court adjudicated him delinquent.

On appeal, J.B.C. challenges the court's finding that he needed treatment, supervision, or rehabilitation. He argues that the Office of Juvenile Probation's recommendation was not for him to receive any treatment or services. *See* J.B.C.'s Brief at 10. Instead, it was "all administrative in nature." *Id.* J.B.C. notes that the probation officer recognized that the Office had been unable to staff his case due to the time constraint, and he claims that this was the office "essentially admitting it was unknown whether [J.B.C.] was in need of any services at the present time." *Id.* (citation omitted). J.B.C. argues that the juvenile court erroneously assumed that the Office of Juvenile Probation would have recommended services if more time was available. *See id.* at 12. Instead, J.B.C. asserts that the Office simply made an administrative recommendation based on the charges alone because it did not have time to gather any information to make a recommendation either way. *See id.* J.B.C. argues that the amount of time the juvenile court had left to supervise him should not have dictated its determination of whether he needed treatment, supervision, or rehabilitation. *Id.* at 12-13. Instead, what

he accomplished between the time of the offenses and his admission should have dictated the court's determination. *Id.* at 13.

J.B.C. argues that he presented evidence that he had engaged in multiple forms of counseling, including school-based, outside of school, and family-based, in the time between the delinquent acts and his admission. *See id.* at 10-11. He graduated from high school and continued his education, studying psychology. *Id.* at 11. He was working part time. *Id.* Additionally, he did not reoffend in the ten years since the delinquent acts occurred. *Id.* According to J.B.C., he achieved everything on his own that the juvenile justice system typically strives to help juveniles with. *Id.* He became a successful, contributing adult member of society, and, thus, he did not need treatment, supervision, or rehabilitation. *Id.*

Based on the record before us, we discern no abuse of discretion in the juvenile court's finding that J.B.C. needed treatment, supervision, or rehabilitation. Here, the Office of Juvenile Probation recommended that J.B.C. be placed on administrative supervision in the custody of his parents, that he submit a buccal sample for DNA testing, that he comply with fingerprints, that his case be eligible for limited public information, and that the court costs be placed on the County of Lancaster. N.T. at 8. J.B.C. discounts the Office's opinion because it was "administrative" in nature and did not recommend that J.B.C. receive any treatment or services. *See* J.B.C.'s Brief at 10. Additionally, the probation officer acknowledged that the Office had been unable to staff J.B.C.'s case due to the time constraint. *Id.* However, we note

that the juvenile court needed to determine if J.B.C. needed treatment, supervision, **or** rehabilitation. Thus, the fact that the Office of Juvenile Probation's recommendation did not include any specific treatment services is not dispositive. The court also acknowledged in its order that because J.B.C. was turning twenty-one on April 16, 2025, the court's jurisdiction was going to expire, but "[a]dditional services are available and in place as established by his parents." Adjudicatory/Dispositional Hearing Order, 4/9/25, at 1. The Commonwealth's attorney also asked that J.B.C. "be adjudicated delinquent under the circumstances." N.T. at 12.

J.B.C. also claims that he did not need treatment, supervision, or rehabilitation because he had engaged in multiple forms of counseling, graduated from high school, was continuing his education, was working part-time, and had not reoffended. **See** J.B.C.'s Brief at 11. Although it was mentioned at the hearing that J.B.C. had completed an evaluation for services, it was not offered to the court as evidence or entered into the record. **See** T.C.O. at 4. Further, the court "was not swayed by the information that [J.B.C.] had been in counseling since he was four years old because that would indicate to the [c]ourt that [J.B.C.] committed these acts, not only while he was actively in counseling, but after years of counseling." **Id.** Additionally, Mother admitted that the counseling was not for the specific behaviors J.B.C. was charged with. **See id.** at 4-5; N.T. at 11. Thus, the court determined that none of J.B.C.'s "arguments were sufficient[ly] credible evidence to the

- 7 -

contrary to rebut the statutory presumption" that he needed treatment, supervision, or rehabilitation. **See** T.C.O. at 4.

Significantly, it was the juvenile court's job as the factfinder, not this Court's job, to weigh the evidence. **See Interest of D.J.B.**, 230 A.3d 379, 387 (Pa. Super. 2020) (citation omitted). The juvenile court was free to believe all, part or none of the evidence presented. **See id.** (citation omitted). The court accepted the Office of Juvenile Probation's recommendation and determined that J.B.C. needed treatment, supervision, or rehabilitation. It believed that the Office's recommendation was "appropriate under the circumstances." N.T. at 13.

Although we acknowledge that the court made the delinquency finding one week before J.B.C. turned twenty-one, J.B.C. does not argue that a court cannot make a delinquency finding shortly before a juvenile's twenty-first birthday, nor does he argue that the court abused its discretion solely because of this short timeframe.

Further, some of the listed purposes of the Juvenile Act are:

> Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of **supervision**, care and rehabilitation which provide balanced attention to the protection of the community, the **imposition of accountability for offenses committed** and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S.A. § 6301(b)(2) (emphasis added). The juvenile court placed J.B.C. on administrative supervision, made the case eligible for limited public

- 8 -

inspection, and required J.B.C. to submit a buccal sample for DNA testing and report for fingerprinting. Thus, the court's order served the purposes of the Juvenile Act of supervision and accountability for offenses committed. *See id.* Additionally, at the end of the hearing, the court found that J.B.C. was "in need of guidance and supervision." N.T. at 14.

Based on the record before us, we cannot say that the court abused its discretion in finding that J.B.C. did not overcome the presumption that he needed treatment, supervision, or rehabilitation. *See* 42 Pa.C.S.A. § 6341(b); *see also C.B.*, 241 A.3d at 686. J.B.C.'s sole issue merits no relief.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/27/2025