J-S65045-18

2019 PA Super 67

| | | |
|---|---|---|
| IN THE INTEREST OF: N.A.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.A.D., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 637 MDA 2018 |

Appeal from the Dispositional Order Entered March 5, 2018
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-JV-0000784-2017

BEFORE: SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                     **FILED MARCH 05, 2019**

N.A.D. appeals from the dispositional order imposed following his adjudication of delinquency for aggravated assault, simple assault, and harassment. He challenges the sufficiency of the evidence to establish aggravated assault. We affirm.

At N.A.D.'s December 2017 delinquency hearing, the Commonwealth presented testimony of the following. On June 29, 2017, W.M., the victim, was standing outside a friend's house with several other males, including N.A.D. N.T., Trial, 12/20/17, at 6-7. N.A.D. yelled at the victim and asked him why he had given N.A.D.'s sister a back rub. *Id.* at 8, 32. N.A.D.'s fists were clenched while he yelled at the victim. *Id.* at 32. As the victim turned around to talk to another male, N.A.D. punched the victim in the jaw on the left side of his face. *Id.* at 8, 9, 33. The victim recalled that after the punch, he "got knocked out and [he] was out for [a while]." *Id.* at 8. When the victim

regained consciousness, blood was pouring from his mouth and he could not talk. *Id.* at 8, 33. He compared the pain that he felt to being hit by a car. *Id.* at 26. N.A.D., who was still outside with the victim, was crying and apologized to the victim. *Id.* at 8. N.A.D. then placed the victim in his car and drove him to his mother's house. *Id.*

The victim's mother drove him to the hospital where he remained in the trauma unit for three days and underwent surgery to have his jaw wired shut. *Id.* at 10. The victim testified that he initially told the medical staff at the hospital that he ran into a pole. *Id.* at 13. However, the medical paperwork read that while the victim initially thought that he ran into a pole, he "later found out he was punched in his face." *Id.* at 26. His jaw was wired shut for six and a half weeks. *Id.* He also testified that the aftermath of the incident included him having to drink through a straw; his jaw still being broken at the time of trial; and at times feeling his jaw shift if he ate something hard. *Id.* at 11.

N.A.D.'s mother testified that on the day of the incident, "[he] had come home and he was crying and said that [the victim's] jaw was broken and that he gave him a ride home and there was blood everywhere." *Id.* at 38. She also testified that her son did not admit to punching the victim even though the police report read that she told Trooper Ryan Kastner that her son admitted to punching the victim. *Id.* at 41.

Trooper Kastner testified that he was responsible for conducting the interviews for the case. *Id.* at 34. He testified that when he went to interview

the victim a day after the incident, the victim "had to talk through his teeth because his jaw was wired shut." *Id.* at 35. Additionally, the victim explained that N.A.D. was yelling at him while they were outside and he asked N.A.D. not to hit him. *Id.* Afterwards he was punched and when he woke up, he was bleeding from his mouth. *Id.* He also told Trooper Kastner that N.A.D. drove him home afterwards. *Id.* Trooper Kastner testified that the victim did not state that he ran into a pole. *Id.*

The trial court found the victim's testimony credible and concluded that the "Commonwealth [had] established beyond a reasonable doubt the offenses alleged." N.T., Findings, 12/20/17, at 4. On March 5, 2018, the trial court adjudicated N.A.D. delinquent for aggravated assault, simple assault, and harassment and entered a dispositional order. N.A.D. filed a post-dispositional motion, which the trial court denied. This timely appeal followed.

N.A.D. raises one issue for our review:

> Whether the evidence was insufficient to sustain N.A.D.'s adjudication for aggravated assault because punching W.M. a single time did not exhibit extreme indifference to the value of human life – let alone intentional infliction of serious bodily injury – where there was no significant size or strength disparity, N.A.D. cried and apologized immediately afterward, and then N.A.D. drove W.M. home so that he could be taken to the hospital?

N.A.D.'s Br. at 4 (suggested answer omitted).

"When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime beyond a reasonable doubt." *In Interest of P.S.*, 158 A.3d 643,

650 (Pa.Super. 2017) (citation omitted). Our standard of review for a challenge to the sufficiency of the evidence is as follows:

> [W]e must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

*Id.* Our scope of review is plenary. *See In re T.D., Jr.*, 57 A.3d 650, 652 (Pa.Super. 2012).

The Commonwealth satisfies its burden of proof for aggravated assault where it proves beyond a reasonable doubt that the defendant "attempt[ed] to cause serious bodily injury to another, or caus[ed] such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." *Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa.Super. 2010) (*en banc*). An intent to cause serious bodily injury may be proven by circumstantial evidence. *See In Interest of C.E.H.*, 167 A.3d 767, 770 (Pa.Super. 2017). Where "the defendant acts recklessly under circumstances manifesting an extreme indifference to human life," the intent requirement is satisfied. *Id.* Additionally, evidence that the defendant punched the victim one time is

sufficient to support an aggravated assault conviction or a *prima facie* case of aggravated assault where the victim sustains serious bodily injury. **See Burton**, 2 A.3d at 602-03; **see also Commonwealth v. Patrick**, 933 A.2d 1043, 1047 (Pa.Super. 2007) (*en banc*) (concluding "surprise attack" via a single punch to victim's temple, resulting in knocking victim to the ground, unconscious, and bleeding from his head, was sufficient to establish *prima facie* case of aggravated assault). In **Burton**, the defendant struck the victim once in the head. On appeal, we concluded while Burton had only punched the victim once, the severity of the injuries that the victim sustained from that punch were sufficient to sustain the aggravated assault conviction. **Id.** at 603. The evidence established that Burton's punch resulted in the victim being knocked unconscious, "his eyes were rolled back into his head, blood was coming from his nose, his head was bloody, and he was involuntarily twitching." **Id.**

While N.A.D. admits that "[the victim] suffered serious bodily injury," he contends that since the victim was only punched once, "the evidence was insufficient to show [he] acted recklessly under circumstances manifesting extreme indifference to the value of human life." N.A.D.'s Br. at 12. No relief is due as this claim is meritless.

Viewing the facts in the most favorable light to the Commonwealth as the verdict-winner, the evidence was sufficient to establish that N.A.D. acted at least recklessly. N.A.D. had his fists clenched during the initial part of the confrontation, and then waited until the victim was not facing him to punch

him with such force that not only broke the victim's jaw but also knocked him unconscious for a period of time while he laid in a puddle of his own blood. N.A.D.'s behavior preceding the attack and the extreme force of just one blow, combined with what the trial court reasonably described as a "sneak attack," *see* Trial Court Opinion, filed May 24, 2018, at 9, sufficed to raise an inference that he acted recklessly under circumstances manifesting extreme indifference to the value of human life. ***See Burton***, 2 A.3d at 604 (concluding actions and statements of defendant before and after altercation were sufficient to establish defendant's intent); ***see also Patrick***, 933 A.2d at 1047 (concluding one punch from defendant combined with injuries that the victim sustained from the punch "demonstrate[d] [Patrick] inflicted an assault on the victim with reckless indifference under circumstances which virtually assured serious bodily injury"). We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Stabile joins this opinion.

Judge Shogan concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/05/2019