J-S14027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEREMY LAMONT KIMBROUGH | : | |
| | : | |
| Appellant | : | No. 1163 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 26, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002613-2019

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.*

MEMORANDUM BY McCAFFERY, J.:        **FILED: SEPTEMBER 26, 2022**

Jeremy Lamont Kimbrough (Appellant) appeals *nunc pro tunc* from the judgment of sentence entered in the Erie County Court of Common Pleas after his jury convictions of aggravated assault, simple assault, and recklessly endangering another person (REAP).[1]  On appeal, Appellant challenges the sufficiency of the evidence for his conviction of aggravated assault,[2] arguing the Commonwealth failed to establish he intended to cause serious bodily injury or acted with extreme indifference to human life.  We affirm on the basis of the trial court opinion.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2701(a)(1), 2702(a)(1), 2705, respectively.

[2] Appellant does not assert any issues regarding his convictions of simple assault and REAP.

In the early morning hours of September 7, 2019, while attending a party at a home on East 11th Street in Erie, Pennsylvania, Appellant engaged in a verbal argument with Karrie Anderson (Victim), his former girlfriend and the mother of his children. Trial Ct. Op., 12/21/21, at 1. The argument turned physical when Appellant punched Victim "in the face with such force that she flew off the porch and onto a concrete sidewalk below." **Id.** At trial, Tanisha Blum, a witness present during the incident, testified that Victim was not the initial aggressor of the attack. **See** N.T., 6/17/21, at 59. As a result of the attack, Victim suffered a traumatic brain injury where she lost a portion of her skull, declined in cognitive function, and "never fully recovered . . . before her death on March 19, 2020."[3] Trial Ct. Op. at 1.

Appellant was subsequently charged with aggravated assault and REAP. This matter proceeded to a two-day jury trial, which began on June 16, 2021. At the close of the Commonwealth's case, Appellant made an oral motion for a judgment of acquittal, arguing the Commonwealth did not establish that Appellant possessed the specific intent to cause serious bodily injury or, in the alternative, the recklessness required for aggravated assault. N.T., 6/17/21, at 73. The trial court denied the motion, stating the testimony reflects that

---

[3] It merits mention that at trial, investigating officers, Erie Police Department Patrolmen Andrew Miller and Daniel Post, testified Victim was between 5'5 and 5'8 with a "heavier" body type, while Appellant was 6'2 and 195 pounds. N.T., 6/16/21, at 89, 107.

serious bodily injury occurred and "came from [Appellant's] punch by a closed fist." *Id.* at 75. The court looked at the following factors:

> the location of the punch, a punch to the face as [V]ictim stood close by . . . a particularly steep set of stairs with concrete below, [Appellant] being almost a foot taller than [V]ictim . . . almost 10 inches larger, and . . . no evidence that [V]ictim was the aggressor . . .did sufficiently manifest recklessness to the degree that it showed . . . an extreme indifference to [V]ictim.

*Id.* Appellant did not testify or present evidence at trial.

After the conclusion of the trial, the jury found Appellant guilty of one count each of aggravated assault, simple assault,[4] and REAP. On July 26, 2021, the trial court sentenced Appellant to a term of 60 to 120 months' incarceration for the aggravated assault conviction, followed by a term of 24 months' probation for the REAP conviction.[5]

Appellant filed a post sentence motion for reconsideration of his sentence, which the trial court denied on August 4, 2021. On September 10, 2021, Appellant filed a motion to reinstate his appellate rights *nunc pro tunc*, which the trial court granted three days later. Appellant filed the present timely appeal and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

---

[4] Appellant requested the trial court include a jury instruction for the lesser included offense of simple assault. N.T., 6/17/21, at 81. The trial court agreed and altered the verdict sheet to include simple assault. *Id.* at 82.

[5] Appellant's conviction for simple assault merged with aggravated assault for sentencing purposes.

On appeal, Appellant raises the following issue:

> Whether the Commonwealth failed to present sufficient evidence to find . . . Appellant guilty beyond a reasonable doubt of aggravated assault?

Appellant's Brief at 3.[6]

Our standard of review of a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted).

_____

[6] While the Commonwealth requested an extension of time to file its appellee's brief, which this Court granted on April 12, 2022, a review of the docket reveals it has not filed the document. ***See*** Order, 4/12/22. Nevertheless, this does not impact our review.

In Appellant's sole claim on appeal, he argues the Commonwealth did not present sufficient evidence to support the intent element of his aggravated assault conviction. Appellant's Brief at 7. He states: "While [Victim] did suffer a serious bodily injury, the surrounding facts and circumstances do not suggest that [he] punched [Victim] with the specific intent of inflicting serious bodily harm upon her." *Id.* at 8. Appellant relies on **Commonwealth v. Alexander**, 383 A.2d 887 (Pa. 1978), to support his argument that he did not possess "the requisite criminal state of mind" for the jury to infer that his actions amounted to an "intent to cause serious bodily injury or a reckless disregard[.]" *Id.* at 9. He also claims the Commonwealth "failed to establish [that he] acted recklessly under circumstances manifesting extreme indifference to the value of human life." *Id.* Appellant maintains that Victim's injuries were "catastrophic," but an "unintended consequence" of his actions. *Id.* at 10. He insists that the Commonwealth failed to establish the requisite intent of aggravated assault, and thus, is entitled to relief. *Id.*

To be guilty of aggravated assault, an individual must "attempt[ ] to cause serious bodily injury to another, or cause[ ] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is any "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of function of any bodily member or organ." 18 Pa.C.S. § 2301.

Here, no one disputes that Victim suffered serious bodily injury. We note:

> Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent.
>
> The Commonwealth need only prove [the defendant] acted recklessly under circumstances manifesting an extreme indifference to the value of human life. For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue.

*Commonwealth v Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007) (*en banc*) (citations omitted).

Regarding Appellant's sole claim on appeal, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude Appellant is not entitled to relief. The trial court opinion comprehensively discusses and properly disposes of his claim. **See** Trial Ct. Op. at 3-11 (finding: (1) Appellant's reliance on **Alexander** is misplaced because here, unlike **Alexander**, the evidence supports the jury's conclusion that Appellant **did** inflict serious bodily injury on Victim which caused her to suffer a skull fracture and a decline in her cognitive abilities; (2) the circumstances surrounding Appellant's attack on Victim, namely their difference in size, the force of the closed fist punch, their location when Appellant attacked Victim, and the evidence supporting Appellant's pattern of abuse towards Victim, supported the jury's reasonable inference that Appellant intended to cause serious bodily injury; (3) the present facts are similar to **Commonwealth v. Burton**, 2 A.3d 598 (Pa.

- 6 -

Super. 2010) (*en banc*), in which a conviction for aggravated assault was upheld where the aggressor delivered a single blow to a victim who then experienced serious bodily injury with a real threat of death; (4) Appellant's actions were also similar to the defendant's in ***Interest of N.A.D.***, 205 A.3d 1237 (Pa. Super. 2019), where a juvenile defendant delivered one punch while the victim was not looking and cause them to become unconscious, and a panel of this Court concluded that the defendant acted "at least recklessly" manifesting extreme indifference towards the value of human life). Accordingly, we affirm on the basis of the trial court's opinion.

We direct that a copy of the trial court's December 21, 2021, opinion be filed along with this memorandum and attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  09/26/2022

**IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA**

COMMONWEALTH OF
PENNSYLVANIA

v.

JEREMY LAMONT KIMBROUGH,
DEFENDANT

CRIMINAL DIVISION

DOCKET NO. 2613 OF 2019

## 1925(a) OPINION

### December 21, 2021

Defendant, Jeremy Kimbrough, appeals his conviction on aggravated assault, simple assault, and recklessly endangering another person. At trial, the Commonwealth presented evidence that in the early morning hours of September 7, 2019, Kimbrough and Karrie Anderson, his former girlfriend and mother of his children, became enmeshed in an argument while at a party; the argument concluded with Kimbrough punching Anderson in the face with such force that she flew off the porch and onto a concrete sidewalk below. Transcript (Tr.), Day 1, pp. 71, 73, 75, 83-84, 95, 114; Day 2., pp. 37, 59-60. As a result, Anderson suffered a "severe traumatic brain injury" that led to the loss of a significant portion of her skull and a profound decline in cognitive functioning. Tr., Day 1, pp. 59, 61, 125. She never fully recovered from her injuries before her death on March 19, 2020. Tr., Day 1, pp. 111, 120-21.

At the close of the Commonwealth's case, Kimbrough made a Motion for Judgment of Acquittal on the aggravated assault charge, arguing that there was insufficient evidence to show either an intent to cause serious bodily injury or that he caused such injury with recklessness "manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1); Tr., Day 2, pp. 73. The Court denied the Motion, holding that a punch to the face at close range by an

aggressor significantly larger than the victim from a porch on the edge of a steep set of stairs located above a concrete sidewalk manifested an extreme indifference to the value of human life sufficient to submit the charge to a jury. Tr., Day 2, pp. 75.

The jury ultimately convicted Kimbrough on all counts. Tr., Day 2, p. 132. The Court sentenced Kimbrough to a period of incarceration of 5-10 years followed by 2 years of probation. Sentencing Tr., p. 27. Kimbrough filed a Post-Sentence Motion for Reconsideration and Modification, which the Court denied. Kimbrough subsequently filed a Motion to Reinstate Appellate Rights Nunc Pro Tunc, which the Court granted.

The instant appealed followed. In his Statement of Matters Complained of on Appeal, Kimbrough raises a sole issue: whether "the evidence was insufficient to convict [him] of Aggravated Assault." Matters Complained of on Appeal, p. 1. Specifically, Kimbrough argues that "[p]ursuant to well-settled case law" a conviction for aggravated assault based upon a single "sucker punch" to a victim is insufficient. Matters Complained of on Appeal, p. 2.

In reviewing challenges to the sufficiency of the evidence presented at trial, the operative question is:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

2

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa. Super. 2019) (citation and internal brackets omitted).

A person commits the crime of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1)). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "[T]he phrase 'under circumstances manifesting extreme indifference to the value of human life' modifies 'recklessly' such that reckless conduct not circumstantially manifesting such indifference will not support an aggravated assault conviction under this subsection." *Commonwealth v. Nichols*, 692 A.2d 181, 186 (Pa. Super. 1997). Rather, "for the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue" or "be such that life threatening injury is essentially certain to occur." *Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995). In other words, aggravated assault is "the functional equivalent of a murder in which, for some reason, death fails to occur." *Id.*

Just as in his Motion for Judgment of Acquittal at trial, Kimbrough asserts that the single blow or "sucker punch" he inflicted on Anderson was insufficient to establish aggravated assault "[p]ursuant to well-settled case law[.]" Matters Complained of on Appeal, p. 2. In *Commonwealth v. Alexander*, 383 A.2d 887 (Pa. 1978), our Supreme Court considered whether a broken nose sustained as a result of a single blow was sufficient to support a conviction for aggravated assault. The Commonwealth conceded that the victim did not actually suffer a serious bodily injury, but

3

argued that the aggressor's act of striking the victim with a closed fist sufficiently evinced his intent to cause serious bodily injury. *Id.* at 193. In rejecting this argument, the Court explained:

> While there can be no dispute about the physiological significance of the head, where the victim did not actually sustain the requisite serious bodily injury, we cannot say that the mere fact that a punch was delivered to that portion of the body is sufficient, without more, to support a finding that appellant intended to inflict serious bodily injury. Where the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury. Criminal intent may be proved by direct or circumstantial evidence. In the instant case, the only direct evidence of appellant's intent is his testimony to the effect that he did not intend to seriously injure the victim. Thus, any evidence of his intent to inflict serious bodily injury must be gleaned from the other circumstances surrounding appellant's attack on the victim. In this case there simply are no such circumstances to support a finding that appellant harbored the requisite intent. There is no evidence that appellant was disproportionately larger or stronger than the victim; appellant was not restrained from escalating his attack upon the victim; appellant had no weapon or other implement to aid his attack; appellant made no statements before, during, or after the attack which might indicate his intent to inflict further injury upon the victim. Appellant delivered one punch and walked away.

*Id.* at 194 (citations omitted).

Here, there exist "other circumstances surrounding the defendant's attack on the victim" that would reasonably allow the jury to infer that he intended to cause serious bodily injury when he delivered the blow. *Id.* Viewing the evidence in the light most favorable to the Commonwealth, Kimbrough was disproportionately larger than Anderson, standing six feet two inches tall and weighing 195 pounds, while Anderson stood only five feet five inches tall. Tr., Day 1, pp. 89, 107. The evidence also indicated that the punch was applied with such force that Anderson "flew down the stairs onto the cement" below. Tr., Day 2, p. 59. Kimbrough would have been aware when he punched Anderson that she was standing on the edge of a porch stairway above a concrete sidewalk, increasing the risk that her head would sustain further serious injury when she fell. Tr.,

4

Day 1, pp. 83-84. Additionally, Kimbrough's statement that Anderson was "okay" and that "they did this all the time" suggests an intentional pattern of abusive behavior. Tr., Day 2, p. 60. And while Anderson may not have been unaware of his presence, the jury could have reasonably inferred she was taken off-guard by the punch, as none of the witnesses testified that she attempted to avoid the blow. Thus, while not all of the *Alexander* factors are implicated in this case, there was sufficient circumstantial evidence from which the jury could reasonably conclude that Kimbrough intended to inflict serious bodily injury. *See Commonwealth v. Russell*, 209 A.3d 419, 428 (Pa. Super. 2019) (holding that the presence of three of the four *Alexander* factors was sufficient to support a finding of intent to inflict serious bodily injury); *see also Commonwealth v. Palmer*, 192 A.3d 85, 96 (Pa. Super. 2018) (noting "[i]t is difficult to accept that this behavior was designed to do anything other than kill or inflict serious bodily injury, and the jury was permitted to attach significance to the natural and probable outcome of that behavior when assessing intent.") (citation and footnote omitted).

Even assuming, for argument's sake, that the evidence is insufficient to support an intent on the part of Kimbrough to cause serious bodily injury to Anderson, then any reliance on *Alexander* is misplaced. In *Alexander*, all agreed that the aggressor did not actually inflict serious bodily injury as that term is defined under the Crimes Code, 383 A.2d at 193, namely, "injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ[,]" 18 Pa.C.S. § 2301, but in this case, the evidence is more than sufficient to support the jury's determination that it did.

After being punched and knocked to the ground, Anderson was unresponsive, blood seeping from her mouth and pooling at her right eye socket. Tr., Day 1, pp. 49, 74; Day 2, p. 59. As a result of the punch, she sustained as skull fracture and subdural hematoma requiring

neurosurgical intervention. Tr., Day 1, p. 49. Anderson's brain swelling was not able to be controlled with medications, requiring an additional surgery to remove a portion of her skull. Tr., Day 1, p. 55. Had the portion of her skull not been removed, she likely would have gone brain dead. Tr., Day 1, p. 56. Anderson was eventually discharged to a traumatic brain injury rehabilitation program. Tr., Day 1, pg. 59. At the time of her discharge from the hospital into rehabilitation, she had not had the missing piece of her skull replaced, requiring her to wear a helmet to protect her brain. Tr., Day 1, pp. 61-62, 125. She remained wheelchair bound, suffered lingering memory loss, had trouble understanding certain words, could often not remember what day of the week it was, and needed reminders to engage in basic hygienic functions, such as bathing. Tr., Day 1, 123-25. These conditions persisted for the remainder of Anderson's life until she passed away on March 19, 2020. Tr., Day 1, pp. 111, 120-21.

"[W]here serious bodily injury is inflicted, the Commonwealth is not required to prove a specific intent; this is because aggravated assault may be proven if the defendant acted recklessly." *Commonwealth v. Hlatky*, 626 A.2d 575, 581 (Pa. Super. 1993) (citation omitted). As previously noted, the requisite *mens rea* is not ordinary recklessness, but recklessness manifesting an extreme indifference to the value of human life "such that life threatening injury is essentially certain to occur." *O'Hanlon*, 653 A.2d at 618. The challenge for the Commonwealth (assuming *arguendo* that it failed to offer sufficient evidence of an intent to cause serious bodily injury) is to show that it offered sufficient evidence to satisfy this heightened recklessness *mens rea*. The case law on this point is instructive.

In *Commonwealth v. Patrick*, 933 A.2d 1043 (Pa. Super. 2007) (*en banc*), the aggressor punched the victim on the side of his head, knocking him off his feet. *Id.* at 1044. The victim hit his head on a sidewalk with nothing to cushion the fall. *Id.* As a result, the victim suffered severe

6

brain trauma, spending two days in a coma and several weeks in therapy. *Id.* at 1047. The Court noted the evidence demonstrated that the defendant "inflicted an assault on the victim with reckless indifference under circumstances which virtually assured serious bodily injury." *Id.* *Patrick*, however, considered whether the evidence was sufficient for purposes of a preliminary hearing where the Commonwealth need only establish a *prima facie* case by demonstrating evidence of each element of aggravated assault; the Commonwealth was not required to prove the offense beyond a reasonable doubt. *Id.* Thus, *Patrick*, although instructive, is not alone dispositive of the question raised by Kimbrough in this appeal: whether the evidence was sufficient to convict him of aggravated assault beyond a reasonable doubt.

Perhaps most amenable to Kimbrough's position is *Commonwealth v. Roche*, 783 A.2d 766 (Pa. Super. 2001). In that case, the victim declined an offer to arm wrestle from the defendant, who was twice the victim's size. *Id.* at 767. Inebriated, the defendant followed the victim out of the bar and ultimately delivered a closed-fist blow to the victim's left eye, causing him to fall to the ground unconscious, hitting his head on concrete, and sustaining a scalp laceration that began to bleed profusely. *Id.* Noting that "[t]he aggravated assault statute is not a strict liability statute[,]" the Court held that "belligerent words and the throwing of one punch are in and of themselves insufficient factors to support the conclusion that Appellant had the requisite intent to cause serious bodily injury when he struck the victim." *Id.* at 770.

Despite insufficient evidence of a specific intent to cause serious bodily injury, the Court went on to consider whether the Commonwealth alternatively had sufficient evidence to prove a *mens rea* of recklessness manifesting extreme indifference to the value of human life. *Id.* at 771. On this point, the Court held:

> Appellant's act of throwing one punch after using belligerent words was clearly insufficient to establish that he acted with such a heightened degree of recklessness

7

that he was virtually assured that death or [serious] injury would occur from his act. Appellant was not, nor could he be, virtually or even reasonably certain that death or serious injury would be the likely and logical result of his lone punch. This was not the functional equivalent of a murder in which for whatever reason death failed to occur.

This was instead an all too common situation in which an individual, no doubt overcome by visions of his pugilistic prowess induced by consumption of alcohol, struck another individual with his fist outside of a bar. The law justifiably sanctions such reprehensible behavior as that which Appellant demonstrated through the offenses of simple assault and reckless endangerment, offenses for which Appellant was rightfully convicted. Appellant correctly does not challenge his convictions for those offenses as the evidence amply supports his conviction for them. Appellant is not, however, a failed murderer, and his conviction for aggravated assault therefore cannot stand.

*Id.* at 772-73 (footnote omitted). Applying the rationale from *Roche* to the case at bar, Kimbrough's conviction for aggravated assault is arguably not supported by sufficient evidence.

The only problem for Kimbrough is that *Roche* is no longer good law. In *Commonwealth v. Burton*, 2 A.3d 598 (Pa. Super. 2010) (*en banc*), the Court repudiated its earlier panel decision in *Roche*. There, the defendant delivered a single blow to the victim, who "fell headfirst to the pavement without the benefit of a reflexive action to protect against the fall." *Id.* at 599, 604. As a result, the victim suffered a traumatic brain injury leading to subdural hemorrhaging and brain swelling. *Id.* at 599-600. The Court held that the evidence was sufficient to show an intent to cause serious bodily injury. *Id.* at 603. Addressing *Roche*, the Court stated:

Inexplicably, in that decision, we did not consider the obviously pertinent circumstances that the victim was turning around when he was blindsided by a man who was twice as large and significantly stronger as well as the existence of other factors, including that the defendant aggressively initiated the attack, which was ceased due to the arrival of police. Given the presence of numerous factors establishing the defendant's intent to inflict serious bodily injury upon his victim as well as his actual accomplishment of that goal, it is clear that the *Roche* holding is not viable.

8

*Id.* at 605. The Court noted "[w]e are cognizant of our Supreme Court's pronouncement...that, [a]ggravated assault is the functional equivalent of a murder in which, for some reason, death fails to occur." *Id.* (quoting *O'Hanlon*, 653 A.2d at 618) (internal quotation marks and ellipsis omitted). However, the Court explained that "the evidence herein establishes that while hospitalized, the victim was in real danger of dying...Thus, this case actually is one where death, for some reason, failed to occur despite the fact that the injuries could have caused that result." *Id.*

Here, as in *Burton*, the aggressor struck a single blow to the victim with "immediately-evident severity[,]" leaving the victim "unconscious and lying on the ground[.]" *Id.* at 604. Additionally, the victim was "lighter" and "smaller" than the aggressor. *Id.* at 605. The evidence also indicated that "the victim was in real danger of dying" while hospitalized. *Id.* While *Burton* did not explicitly address whether the evidence was sufficient to show recklessness manifesting an extreme indifference to the value of human life, it logically follows that evidence sufficient to support a higher *mens rea, i.e.* specific intent to cause serious bodily injury, will necessarily support a finding of a lower mental state, such as extreme disregard for the value of human life.

Such was the case in *Interest of N.A.D. (Appeal of N.A.D.)*, 205 A.3d 1237 (Pa. Super. 2019). In that case, a juvenile punched his victim in the jaw on the left side of his face. *Id.* at 1238. The victim was "out for a while" after the punch. *Id.* When the victim regained consciousness, blood was pouring from his mouth and he could not speak. *Id.* at 1238-39. Immediately following the attack, the aggressor expressed remorse for his actions, crying and apologizing to the victim. *Id.* at 1239. Nevertheless, the juvenile was convicted of aggravated assault. Reviewing the sufficiency of the evidence on appeal, the Superior Court, relying on *Patrick* and *Burton*, concluded:

> Viewing the facts in the most favorable light to the Commonwealth as the verdict-winner, the evidence was sufficient to establish that N.A.D. acted at least recklessly.

9

N.A.D. had his fists clenched during the initial part of the confrontation, and then waited until the victim was not facing him to punch him with such force that not only broke the victim's jaw but also knocked him unconscious for a period of time while he laid in a puddle of his own blood. N.A.D.'s behavior preceding the attack and the extreme force of just one blow, combined with what the trial court reasonably described as a "sneak attack" sufficed to raise an inference that he acted recklessly under circumstances manifesting extreme indifference to the value of human life.

*Id.* at 1240 (citation omitted).

Just as in *Appeal of N.A.D.*, the evidence presented at Kimbrough's trial was sufficient to enable the jury to reasonably conclude that he acted with a *mens rea* of recklessness manifesting an extreme indifference to the value of human life when he delivered the single-blow punch to Anderson. First, he was significantly taller than her, standing six feet two inches tall, while she stood only five feet five inches in height. Tr., Day 1, pp. 89, 107. Second, Kimbrough initiated the aggression. Tr., Day 2., p. 35. Third, Kimbrough punched Anderson in the face, a vital part of the body, with a closed fist. Tr., Day 2, pp. 35-36, 58. Fourth, the force of the punch was so strong that she "flew" off of the porch. Tr., Day 2, pp. 36-37, 59. Fifth, Anderson stood on the edge of an elevated porch stairway overlooking a sidewalk, increasing the chances she would sustain further serious injuries if she landed on the concrete. Tr., Day 1, pp. 80-84. Sixth, although there was no evidence that Anderson was necessarily turned away from Kimbrough or unaware of where he stood, that she apparently made no attempt to avoid the punch reasonably permitted the jury to infer that she was surprised by the attack. Seventh, Kimbrough appeared to downplay the severity of the assault in the moments after he punched Anderson, stating she was "okay" and that "they do this all the time." Tr., Day 2, p. 60. These actions on the part of Kimbrough represent an extreme indifference for the value of Anderson's life. Indeed, the fact that she landed on the back of her head, Tr., Day 2, p. 37, that she was knocked out, blood visibly pooling from her mouth and

10

eyes, and the severity of the brain trauma and rehabilitation she endured, all confirm the gross recklessness of Kimbrough's actions. Tr., Day 1, pp. 49, 55-56, 59, 61-62, 74; Day 2, p. 59

In sum, contrary to Kimbrough's suggestion, the case law reveals that a single blow or "sucker punch" to the head can be sufficient to sustain a conviction for aggravated assault under Section 2702(a)(1). To be sure, not every punch to the head will necessarily be adequate to constitute aggravated assault such that it is "the functional equivalent of a murder in which, for some reason, death fails to occur." *O'Hanlon*, 653 A.2d at 618. Instead, the analysis is highly fact-specific and dependent upon the nature of the punch itself and the circumstances in which it is delivered. But by the same token, neither does Pennsylvania law categorically preclude a conviction for aggravated assault based upon a single punch, as illustrated in cases like *Patrick*, *Burton*, and *Appeal of N.A.D.*

All things considered, and viewing the evidence in the light most favorable to the Commonwealth, the evidence presented at trial was sufficient as a matter of Pennsylvania law to show that Kimbrough inflicted serious bodily injury upon Anderson by virtue of his single "sucker punch" to her head, and that he acted either with specific intent to do so or with recklessness manifesting an extreme indifference to the value of human life. To the extent that *Roche* suggests otherwise, that decision "does not comport with" the current state of the law in this Commonwealth. *Burton*, 2. A.3d at 605. Because the evidence was sufficient to permit the jury to find Kimbrough guilty beyond a reasonable doubt of aggravated assault under Section 2702(a)(1), his conviction should be affirmed.

BY THE COURT:

MARSHALL J. PICCININI, JUDGE

11

cc:     Court Administration
        Jeremy C. Lightner, Esquire- District Attorney's Office
        Emily M. Merski, Esquire – 210 East 2nd Street, Erie, PA 16507 (for Defendant)

12