J-A23020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRADLEY THOMAS SIPES | : | |
| | : | |
| Appellant | : | No. 1576 MDA 2021 |

Appeal from the Judgment of Sentence Entered June 4, 2021
In the Court of Common Pleas of Fulton County Criminal Division at
No(s): CP-29-CR-0000071-2019

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED OCTOBER 26, 2022**

Bradley Thomas Sipes (Appellant) appeals from the judgment of sentenced entered in the Fulton County Court of Common Pleas following his jury convictions of aggravated assault and simple assault and his non-jury conviction of harassment.[1]   On appeal, Appellant challenges: (1) the sufficiency of the evidence supporting his conviction for aggravated assault; and (2) the discretionary aspects of his sentence.  For the reasons below, we affirm.

On December 27, 2018, Appellant delivered a single punch to his then girlfriend, April Exline (Victim), causing a broken rib and ruptured spleen, requiring emergency surgery to remove her spleen.  N.T. Jury Trial, 5/12/21,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), 2709(a)(1), respectively.

at 25-26, 39-40. Appellant was charged with aggravated assault, simple assault, and a summary charge of harassment. This case proceeded to a one-day jury trial on May 12, 2021, where the Commonwealth presented the following evidence.

Victim testified that at the time of the incident, she, Appellant, and Appellant's one-year old son were living with a friend in Warfordsburg, Fulton County, Pennsylvania. N.T. Jury Trial at 23-24. Between 6:00 a.m. and 7:00 a.m. on December 27, 2018, Appellant's son walked up to where Victim and Appellant were sleeping, in the living room of the home. *Id.* at 24-25, 27. Appellant asked Victim why she was not "reaching out to" the child, and she responded, "I just woke up. . . . I'm looking at him." *Id.* at 25. Victim stated that "some words were exchanged" and a verbal argument ensued, but she could not recall if they were "kind" or "angry" words. *Id.* Victim testified that Appellant "was upset because [she] hadn't reached for his son." *Id.* Victim then moved to lay down on a futon in the living room and Appellant approached her and hit her with a fist on her left side, near her ribs. *Id.* at 25-26. After Appellant hit Victim, she told him "[s]omething is wrong" and that she "need[ed] to go to the hospital." *Id.* at 25. Appellant responded that "he had hit [Victim] harder [than that] before and that [she] was fine." *Id.* at 25-26. Victim told Appellant she was "dizzy[,]" "sick[,]" and again that "something [was] wrong" as she got ready to leave to get help. *Id.* at 26.

Victim drove to where she worked, a convenience store in Hancock, Maryland 10 minutes away, to get help because she "knew something was

- 2 -

wrong." N.T. Jury Trial at 27-28. On her way to the convenience store, Victim vomited twice. *Id.* at 27. Once she arrived, she called her boss and told her, "I need help. . . . Something is wrong." *Id.* at 28. Victim's boss called an ambulance and Victim was transported to Meritus Medical Center in Maryland. *Id.* While at the hospital, Victim was told she was "bleeding internally and [she] was lucky [she] made it there when [she] did[.]" *Id.* at 29. Victim was in the hospital for six days. *Id.* at 35.

The Commonwealth then presented the testimony of Kevin Hurtt, M.D., the chief general surgeon at Meritus Medical Center. N.T. Jury Trial at 37. Dr. Hurtt testified that he treated Victim after her injury. *Id.* at 39. Victim had "3 to 4 lacerations [on her] spleen" that caused internal bleeding in her abdomen and a "single rib fracture." *Id.* at 39-40. Dr. Hurtt stated Victim had a "high level trauma" injury that was "life-threatening[.]" *Id.* at 40-42. Dr. Hurtt described a "high level trauma" injury as "when someone has a gunshot or a stab wound, a serious car accident, [or] a fall from a great height." *Id.* at 42. Dr. Hurtt performed an "emergency laparotomy" to remove her spleen. *Id.*

Appellant did not testify or present any evidence. At the conclusion of trial, the jury returned a verdict of guilty on both aggravated assault and simple assault, and the trial court found Appellant guilty of harassment. On June 4, 2021, the trial court held a sentencing hearing. Appellant presented the testimony of psychologist Thomas F. Haworth, who testified that he believed that due to Appellant's "chronic history of trauma and disruption in

his life" and multiple suicide attempts, he would benefit from psychiatric treatment in a hospital. N.T. Sentencing, 6/4/21, at 15-16. Further, he stated, "[I]t's hard to do trauma work in environments where you are actively being exposed to the potential for other trauma" and "[h]ospitals are a better place[.]" *Id.* at 16.

Before sentencing Appellant, the trial court noted the following:

> As part of the [pre-sentence investigation report (PSI)], I looked at [Appellant's] previous criminal history, I looked at [Appellant's] mental health disorders, [and] the treatment that [Appellant has] had to date. . . .

> I heard today the testimony and information provided from Dr. Haworth, which was valuable and informative. In addition to the reports that I had prior . . . to [Appellant's] trial, reviewed the[m] again, refreshed my recollection of those in preparation for today's sentencing.

> One of my determinations is the consideration of the protection of the public. As I reflected on [Appellant's] trial, I admittedly heard testimony about a statement that was disturbing. And I heard no empathy after [Appellant] hit [Victim].

> Instead, I heard [that] when she . . . indicated she was in pain or something was wrong, [Appellant said he has] hit [Victim] harder in the past and hadn't caused a problem. That statement has been troubling [to] me. . . .

N.T. Sentencing, 6/4/21, at 25. The trial court stated it considered the protection of the public, Appellant's rehabilitative needs, and the impact on Victim, and that it was not "unsympathetic to someone who has mental health conditions that require treatment." N.T. Sentencing at 26-27.

The standard range for aggravated assault was 72 to 90 months' incarceration, and the trial court sentenced Appellant to 85 to 170 months.

N.T. Sentencing at 12. The trial court did not impose further sentences of incarceration for Appellant's convictions of simple assault or harassment.

Appellant filed a post-sentence motion where he challenged the sufficiency of the evidence for both aggravated assault and simple assault, and alleged the trial court imposed an "excess[ive]" minimum sentence.[2] Appellant's Post Sentence Motion, 6/14/21, at 2 (unpaginated). The trial court denied the motion and Appellant filed this timely notice of appeal. Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Appellant raises the following claims:

1. Whether the Commonwealth's evidence was sufficient to prove that [Appellant] committed aggravated assault against [Victim]?

2. Whether [Appellant's] sentence, while being within the sentencing guidelines, should be modified as being unreasonable considering the circumstances of the case?

Appellant's Brief at 5.

In his first claim, Appellant avers the Commonwealth failed to present evidence that he "possessed the level of malice necessary to satisfy the knowing and reckless elements" of aggravated assault.[3] Appellant's Brief at

---

[2] The trial court addressed the sufficiency of the evidence regarding simple assault and the weight of the evidence as to both aggravated and simple assault. Appellant does not raise these claims in his brief and as such, abandons these challenges on appeal.

[3] At trial, the Commonwealth conceded Appellant did not intentionally cause serious bodily injury to Victim. N.T. Jury Trial at 61.

17. Appellant argues that "convincing direct testimony" from Victim was necessary for the fact finder to conclude he "acted in such a way to satisfy the elements of knowingly or recklessly causing serious bodily injury." *Id.* at 18. Instead, Appellant contends, there was "no evidence" of how hard he hit Victim, and she only testified that they "had words" but could not recall whether the words were "angry" or "kind." *Id.* at 14. Appellant maintains that what Victim did testify to, that he "hit her harder before and nothing happened[,]" demonstrated he "could not have [known] his conduct [would] result in a serious bodily injury." *Id.* at 14-15. Appellant admits that Dr. Hurtt testified that Victim's injuries were "high level trauma" and "life threatening[,]" but asserts that it is only circumstantial evidence that "must be considered in relation to other evidence[.]" *Id.* at 17-18. We conclude no relief is due.

Our standard of review of a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

- 6 -

evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted).

Preliminarily, we note Appellant only challenges the *mens rea* element of his conviction of aggravated assault. To commit aggravated assault, an individual must "attempt[ ] to cause serious bodily injury to another, or cause[ ] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1).

Further, "knowingly" and "recklessly" are defined as follows:

**(2)** A person acts knowingly with respect to a material element of an offense when:

**(i)** if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

**(ii)** if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

**(3)** A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(2)-(3).

- 7 -

In the instant matter, the trial court concluded the Commonwealth presented sufficient evidence that Appellant acted with recklessness when he attacked Victim. Trial Ct. Op., 10/12/21, at 5.[4] The trial court opined:

> The force of the hit was likened by Dr. Hurtt to the force occurring in a car accident or a fall from a great height. The jury reasonably could have found [Appellant] consciously disregarded a substantial and unjustifiable risk that serious bodily injury would result from conduct likened to force from a car accident or a fall from a great height. [Appellant's] disregard was a gross deviation from the standard of conduct that a reasonable person would observe in [Appellant's] situation.

*Id.* at 5-6 (citations to trial transcript omitted). We agree.

Additionally, Appellant maintains testimony regarding his intent must have come from Victim. He wholly ignores that the testimony of Dr. Hurtt was satisfactory to sustain his conviction. Appellant's assertion, that the testimony was "circumstantial" and must be viewed alongside the remaining evidence, is not persuasive. Appellant's Brief at 18. This argument entirely ignores that the Commonwealth may sustain its burden "by means of wholly circumstantial evidence." **See Antidormi**, 84 A.3d at 756. The jury considered all the evidence presented and concluded Appellant had the intent to cause serious bodily injury to Victim, which it was free to do. **See id.** Appellant's insistence that evidence of his intent came from the incorrect source affords him no basis

_____

[4] The trial court stated in its January 6, 2022, Rule 1925(a) opinion that it was relying on its October 12, 2021, opinion denying Appellant's post-sentence motion for each of the issues on appeal. Trial Ct. Op., 1/6/22, at 2-3.

for relief. We detect no error in the trial court's decision not to disturb the jury's finding of guilt. *See id.*

Further, where serious bodily injury is inflicted, the Commonwealth need not show specific intent, but may demonstrate that the attacker acted recklessly to the point of extreme indifference to the value of human life. *See In re N.A.D.*, 205 A.3d 1237, 1240 (Pa. Super. 2019) (where "the defendant acts recklessly under circumstances manifesting an extreme indifference to human life," the intent requirement for aggravated assault is satisfied and may be shown through circumstantial evidence); *Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa. Super. 2010) (*en banc*) (where the victim sustains serious bodily injury, the Commonwealth "can, but does not necessarily have to, establish specific intent to cause such harm"). Furthermore, this Court has stated, "[E]vidence that the defendant punched the victim **one time** is sufficient to support an aggravated assault conviction . . . where the victim sustains serious bodily injury." *N.A.D.*, 205 A.3d at 1240 (emphasis added). *See also Commonwealth v Patrick*, 933 A.2d 1043, 1047 (Pa. Super. 2007) (*en banc*) (one punch to the victim's temple, causing the victim to lose consciousness and bleed from their head, was sufficient to establish a *prima facie* case of aggravated assault). No relief is due.

In his second claim, Appellant maintains the trial court failed to properly consider his rehabilitative needs, namely that he was "ill" and would be "impacted by effective therapies." Appellant's Brief at 20. Appellant, relying on the testimony of Dr. Haworth, insists that without the "intervention of

medication and psychotherapy, [he] will continue to have problems managing his behavior." *Id.* Appellant argues the trial court's decision to "sentence him . . . above the middle of the standard range showed particular bias toward [Victim] and ill will toward him." *Id.* at 21. Appellant contends a sentence toward the bottom of the standard range would have satisfied the requirements of 42 Pa.C.S. § 9721(b). *Id.*

There is no automatic right to review of a challenge to the discretionary aspects of sentencing. *Commonwealth v. White*, 193 A.3d 977, 982 (Pa. Super. 2018).

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal [was timely-filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [pursuant to Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Id.* (citation omitted).

Appellant has satisfied the first three prongs of this analysis, where he raised this challenge in a post-sentence motion, filed a timely appeal, and included in his brief a Rule 2119(f) statement. Therefore, we now consider whether Appellant has raised a substantial question for our review.

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is

- 10 -

within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

***Commonwealth v. Swope***, 123 A.3d 333, 340 (Pa. Super. 2015) (citation omitted). Further, a claim that a court imposed an excessive sentence after not considering rehabilitative needs raises a substantial question. ***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted) (concluding a challenge that the trial court imposed a sentence that was "unreasonable and contrary to the fundamental norms of the Sentencing Code" and did not consider the appellant's rehabilitative needs raised a substantial question).

Based on our review, we conclude Appellant's claim, that the trial court imposed an excessive sentence after not considering his rehabilitative needs, raises a substantial question. ***See Baker***, 72 A.3d at 662.

Our standard for reviewing a challenge to the discretionary aspects of a sentence is well-settled:

[S]entencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

***White***, 193 A.3d at 984 (citation omitted). When fashioning a sentence, the trial court must consider the "protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the

community, and the rehabilitative needs of the defendant." 42 Pa.C.S §
9721(b).

Though Appellant has raised a substantial question, we conclude he is
not entitled to relief. The sentencing transcript reveals the trial court explicitly
considered Appellant's rehabilitative needs. *See* N.T. Sentencing at 25-26.
The trial court stated in its opinion:

> [The trial court] directly addressed the factors on the record,
> most specifically, the rehabilitative needs of [Appellant. The trial
> c]ourt noted [Appellant] has significant mental health needs, was
> not unsympathetic to those needs, and expressed that [Appellant]
> should receive mental health treatment as required during his
> period of incarceration. The [trial c]ourt addressed the need for
> continuing mental health treatment in the Order . . . dated June
> 4, 2021. The [trial c]ourt found that in balancing the factors,
> specifically, the impact of [V]ictim and the safety of the
> community with [Appellant's] needs for mental health treatment,
> the sentence issued is appropriate. . . .

Trial Ct. Op. 10/12/21, at 3. We agree.

Appellant argues the trial court's imposition of a sentence "above the
middle" of the standard range shows a bias towards Victim without further
explanation. *See* Appellant's Brief at 19-21. At sentencing, the trial court
stated it considered Appellant's PSI, which included his mental health history,
as well as Dr. Haworth's recommended treatment. N.T. Sentencing at 25.
However, the trial court also stated at sentencing it "heard no empathy" from
Appellant and specifically noted it found especially "troubling" Appellant's
statement that he had hit Victim "harder" in the past and she "was fine." N.T.
Sentencing at 25; *see* N.T. Jury Trial at 25-26. Appellant fails to recognize

that the trial court did consider his rehabilitative needs and imposed a sentence within the standard range after a thoughtful analysis of such. **See** N.T. Sentencing at 25-26. His disagreement with the outcome does not rise to an abuse of discretion, and thus we will not disturb his sentence on appeal. **See White**, 193 A.3d at 984. No relief is due.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/2022